DALE A. MARTINI, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 643, 2006.
Supreme Court of Delaware.
Submitted: December 5, 2007.
Decided: December 21, 2007.
Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 21st day of December 2007, it appears to the Court that:
(1) Dale Martini, defendant-appellant, appeals a Superior Court judge's order finding him in violation of probation, revoking his Level III probation sentence, and sentencing him to six years at Level V supervision. Martini argues that the judge improperly ordered Martini removed from his violation of probation hearing and limited his right to be heard, to present evidence, and to question witnesses at his the hearing. Martini also contends that the judge's sentence of six years at Level V supervision deviated from the sentencing guidelines without articulating with particularity the reasons for deviating from the guidelines. Because the judge failed to warn Martini adequately before removing him from the VOP hearing and because the judge deviated from the sentencing guidelines without any explanation, we REVERSE and REMAND.
(2) In November 2006, the State charged Martini with violating three of the terms of his Level III probation imposed after a fourth degree rape conviction. At his December 2006 VOP hearing, the probation officer explained that Martini had been arrested on new charges, failed to attend three scheduled office visits with his probation officer and three sex offender group meetings, and was not home for one telephone curfew check. The new charges against Martini, i.e. criminal impersonation and second-degree forgery, rested on the fact that Martini used the name Kedar Anshari Ptah-El on a defendant history form and identified himself by that name to a police officer.
(3) At the VOP hearing, a public defender came to represent Martini, but he refused representation. Martini asked to address the judge himself and said "I do not accept any representation from the Public Defender's Office and no one claims power of attorney over the living soul." The judge attempted to determine Martini's position on the VOP charges. Rather than stating his position, a stirred Martini objected to being identified as Dale A. Martini and to his name being spelled in all capital letters. When the judge asked Martini to clarify his position, Martini declared that he was "not the person you're referring to." The judge informed Martini that his identity had already been established and that the purpose of the hearing was to "sentence [Martini] on violating [his] probation." Martini then began arguing with the judge and proclaimed that his name was "Kedar Anshari Ptah-El" and "I can't answer anything under Mr. Martini. I need from you a delegation of authority order, your license to practice law, and I need you to establish status in this case before you." The judge informed Martini if he did not stop arguing "right now" that she would find him in contempt. Martini continued arguing and responded that, among other things, "[f]or the record, I'm not Mr. Martini." The judge ordered Martini removed from the courtroom, found him in contempt, and stated that:
I think I can go forward with the sentencing because I'm going to find him in violation irrespective [sic] because I can't expect him to act or behave any differently next time.
The probation officer told the judge that Martini had not submitted any documents indicating that he legally changed his name. The judge concluded:
As far as this Court is concerned, he is Dale Martini, Jr. That's the way he was named at birth . . . we can put [Kedar Anshari Ptah-El] as an a/k/a, but he still gets sentenced as the person that was standing before me. So I'm just going to revoke his probation . . . .
The probation officer recommended that, if the judge found Martini in violation of his Level III probation, Martini should be sentenced to six years at Level V supervision, suspended after three years of imprisonment, followed by decreasing levels of supervision. The judge ultimately sentenced Martini to six years Level V incarceration. This appeal followed.
(4) Martini argues that the judge violated his due process rights by denying his opportunity to be heard, to present evidence, and to question witnesses after the judge excluded him from the VOP hearing. We review an alleged violation of constitutional rights de novo.[1]
(5) Revocation of probation results in a loss of liberty and entitles the probationer to a hearing and certain "minimum requirements of due process."[2] Superior Court Criminal Rule 32.1(a) provides:
Revocation of partial confinement or probation. Whenever a person is taken into or held in custody on grounds that the person has violated a condition of partial confinement or probation, the person . . . shall be afforded a prompt hearing before a judge of Superior Court on the charge of violation. The person shall be given:
(A) Written notice of the alleged violation;
(B) Disclosure of the evidence against the person;
(C) An opportunity to appear and present evidence in the person's own behalf
(D) The opportunity to question adverse witnesses; and
(E) Notice of the person's right to retain counsel and, in cases in which fundamental fairness requires, to the assignment of counsel if the person is unable to obtain counsel.
(6) The record indicates that the judge held no hearing on the question of whether Martini violated his probation. The probation officer appeared on behalf of the State and set forth the allegations giving rise to the VOP. Martini never admitted violating probation. And the judge heard no testimony about Martini's alleged VOP. Instead, the judge summarily found that Martini violated probation. The judge stated that the reason for Martini's appearance was to sentence him for a violation of probation and not to conduct a hearing on the issue of whether Martini violated his probation and, if so, whether any mitigating circumstances existed.
(7) A defendant's due process rights at a VOP hearing are not unlimited. In Illinois v. Allen, the United States Supreme Court held that:
[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.[3]
Here, the judge employed cumulatively two of the three remedies listed by the Allen court. The judge found Martini in contempt and ordered him removed from the courtroom. We conclude that these sanctions were not a reasonable response to Martini's conduct.
(8) First, the record shows that the judge found Martini in contempt. Under Superior Court Criminal Rule 42(a) and 11 Del. C. §§ 1271 and 1272, direct criminal contempt, i.e. when the "judge saw or heard the conduct constituting the contempt [which] was committed in the actual presences of the court," may be punished summarily. The judge sanctioned Martini for contempt by removing him from the courtroom without the opportunity to return. Although "Delaware courts have the inherent power to impose criminal sanctions for contempt" (independent of contempt as a statutory crime),[4] these circumstances did not warrant that sanction. In analyzing the methods judges can use to maintain an appropriate courtroom atmosphere, the United States Supreme Court noted that the remedy of contempt, as opposed to removal, is appropriate where it would result in the defendant remaining in the courtroom but behaving in a civilized manner.[5] In Martini's case, the remedy of contempt resulted in his removal from the courtroom without warning that contempt might result in his permanent removal from the proceedings. The judge apparently found Martini in contempt because of Martini's insistence to be addressed as Kedar Anshari Ptah-El. However, this conduct may have been intimately related to Martini's new criminal charge of criminal impersonation and forgery. To admit that his name was not Kedar Anshari Ptah-El exposed Martini to potential criminal liability on the pending charges.[6]
(9) Second, the judge removed Martini from the courtroom. Superior Court Criminal Rule 43(b)(2) provides that "[t]he further progress of the trial . . . shall not be prevented and the defendant shall be considered to have waived the right to be present whenever [the] defendant . . . [a]fter being warned by the court that disruptive conduct will cause removal . . . persists in conduct as to justify exclusion from the courtroom." In Allen, the United States Supreme Court upheld removal of a defendant and emphasized that that Allen had been "repeatedly warned by the trial judge that he would be removed from the courtroom if he persisted in his unruly conduct" and "constantly informed that he could return to the trial when he would agree to conduct himself in an orderly manner."[7] However, the judge employed none of these safeguards. The judge never warned Martini nor gave him an opportunity to return if he promised to conduct himself in an orderly manner. The judge prematurely determined that "I can't expect him to act or behave any differently the next." Because Martini did not receive "minimum requirements of due process" at his VOP hearing and because Martini did not waive those rights by his conduct, the judge violated Martini's right to due process.
(10) Martini also argues that the judge improperly sentenced him. We review sentencing of a criminal defendant for abuse of discretion.[8] In general, our review ends once we determine that the sentence is within the statutory limits prescribed by the legislature. Here, Martini's December 5, 2006 VOP sentence fell within the statutory limits.[9] Even in these circumstances, we have appellate jurisdiction to review criminal sentences where the defendant alleges "unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a `closed mind;' and any other illegality."[10] In this case, the last two categoriessentencing with a closed mind and illegalityare at issue.
(11) Martini claims that his sentence was "illegal" because the December 2006 VOP order fails to give Martini credit towards his Level V incarceration for time previously served at Level IV VOP Center.[11] The record is unclear about how much time, if any, Martini served at Level IV VOP Center but the State concedes on appeal that "to the extent Martini was not given credit for time previously served in the VOP Center, he should be afforded credit." Because the presiding judge failed to account for time previously served by Martini at the VOP Center, a judge must consider Martini's time served should a judge find at a new VOP hearing that Martini, in fact, violated probation.
(12) Martini also contends that the judge sentenced him with a "closed mind" because the judge deviated from both the probation officer's recommendation and from SENTAC sentencing guidelines.[12] The judge departed from the guidelines, without stating with particularity her reasons for the departure: (1) the court raised the supervision level from Level III to Level V; and (2) the court imposed a Level V supervision period of incarceration significantly higher than that recommended by the SENTAC guidelines.
(13) Under the SENTAC sentencing guidelines, where a judge determines "that the offender is guilty of the violation and probation is to be revoked, it is presumed that the offender may move up only one SENTAC level from his/her current level" and "may have [the] level of supervision raised more than one level if ... aggravating circumstances exist."[13] Here, Martini was serving Level III probation at the time of his VOP hearing. After the judge found that Martini violated his probation, the sentencing guidelines recommend Level IV probation. Yet, the judge gave Martini Level V incarceration without identifying any aggravating factors justifying that two level jump.
(14) Second, under the SENTAC sentencing guidelines, whenever a judge imposes Level V incarceration, the incarceration period should be "in accordance with the current SENTAC standard presumptive sentence for the original crime for which the probation is being served."[14] Here, Martini's probation related to a fourth-degree rape conviction with a "standard presumptive sentence" of 30 months at Level V supervision. The judge, however, sentenced Martini to 6 years (72 months) at Level V supervision.
(15) Although the SENTAC sentencing guidelines are "voluntary" and "non binding,"[15] this Court's Administrative Directive No. 76 requires that judges "set forth with particularity the reasons for the deviation" from the guidelines, in order to allow appellate review by this Court.[16] Here, the judge clearly departed from the guidelines but failed to state any reasons for her departure. Moreover, the judge exceeded the sentence recommended by the probation officer and failed to account for any time already served. Finally, the judge sentenced Martini moments after she found him in contempt. Because the judge ordered Martini removed from the courtroom, Martini had no opportunity to argue that he did not violate his probation, present evidence regarding his character, or present any other mitigation evidence. We have previously held that a judge "must have an open mind for receiving all information related to the question of mitigation," and that a judge exhibits a "closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[17] If, a judge determines at a new hearing that Martini did violate his probation, the judge must sentence Martini in accordance with this order.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED and REMANDED.
NOTES
[1] See Bentley v. State, 930 A.2d 866, 871 (Del. 2007).
[2] Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973).
[3] 397 U.S. 337, 337 (1970).
[4] DiSabatino v. Salicete, 671 A.2d 1344, 1348 (Del. 1996).
[5] See Allen, 397 U.S. at 345 (noting that citing or threatening to cite might be sufficient to punish the contumacious defendant and allow the defendant to remain in the courtroom).
[6] Martini was later found not guilty of these offenses.
[7] 397 U.S. at 346 (emphasis added).
[8] See Kurzmann v. State, 903 A.2d 702, 704 (Del. 2006).
[9] The December 5, 2006 VOP sentence (six years at Level V supervision) is not greater than the previous VOP sentence (six years at Level V supervision, suspended after six years at Level IV VOP Center supervision, suspended after six months served at Level IV VOP Center supervision, followed by 2 years at Level III supervision). See Pavulak v. State, 880 A.2d 1044 (Del. 2005) (holding that trial court is precluded from imposing a VOP sentence exceeding the total sentence originally imposed in prior VOP proceedings).
[10] Siple v. State, 701 A.2d 79, 83 (Del. 1997).
[11] See Anderson v. State, 2006 WL 3931460 (Del. 2006) (holding that defendant should be given Level V credit for time spent at Level IV VOP Center).
[12] See Delaware SENTAC Handbook, at 104 (2006), Violation of Probation Sentencing Policy.
[13] Id. at 104.
[14] Id. at 104.
[15] See Mayes v. State, 604 A.2d 839, 846 (Del. 1992).
[16] Supreme Court Administrative Directive No. 76, dated September 15, 1987.
[17] Weston v. State, 832 A.2d 742, 746 (Del.2003).