Dorothy A. CARRIGAN, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below–Appellee.

No. 449, 2007.

Supreme Court of Delaware.

Submitted: Jan. 7, 2008.
Decided: April 2, 2008.

Joseph M. Leager, Jr., Esquire, and Nicole M. Walker, Esquire, of the Office of the Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, of the Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

Defendant–Appellant Dorothy Carrigan appeals from a Superior Court decision affirming the Court of Common Pleas's denial of Carrigan's Motion for New Trial and Recusal following a violation of probation ("VOP") hearing. Carrigan alleges due process violations and an appearance of impropriety arising from *ex parte* communications between Carrigan's probation officer and the sentencing judge about her probation. The Court of Common Pleas judge, who disclosed the communication, denied her motion, and the Superior Court affirmed his rulings. Carrigan claims that the Superior Court erred by failing to find that her due process rights were violated. She also claims that the trial judge erred by failing to recuse himself. We find no merit to her appeal and affirm.

## I. Facts

In September 2004, Carrigan pled guilty to possession of drug paraphernalia. A Court of Common Pleas judge sentenced her to 180 days at Level 5, suspended for one year at Level 2 probation, with the condition that (among other things) Carri-

gan attend drug treatment.[1] In April and June 2005, Carrigan was twice found guilty of violating her probation. While a third VOP charge was pending, Carrigan sought a modification of her sentence to enable her to participate in a residential substance abuse treatment center in New York State. The Court of Common Pleas judge who had initially placed Carrigan on probation dismissed the new VOP charges and granted her motion. Carrigan's modified sentence was for 180 days at Level 5, suspended for one year at Level 1 probation, conditioned upon completion of residential treatment for substance abuse at the treatment facility in Garrison, New York for at least 6 months. After this treatment, Carrigan was to call her designated probation officer once a week and submit to drug urine screening.

During her treatment in New York, Carrigan was hospitalized for a back problem. She was administered Demerol for pain and, as a result, was discharged from the drug treatment facility less than one month after her arrival. Carrigan returned to Delaware. Probation officer Francis Caserta decided not to file a VOP charge—despite Carrigan's failure to complete the drug treatment program in New York—so long as she called Caserta on a regular basis, submitted to drug testing and refrained from committing new criminal offenses.

During this probation term, Carrigan was arrested and convicted of loitering.[2] Caserta then filed a VOP report with the Court of Common Pleas judge, indicating that Carrigan was in violation of her probation for: (i) failing to complete the drug treatment program in New York, (ii) not calling her probation officer once a week, (iii) not reporting for drug urine screening,

and (iv) being convicted of a new criminal offense (loitering). Caserta's report recommended reinstatement of the original sentence at Level 5. Upon receiving Caserta's report, the Court of Common Pleas judge ordered that a capias issue for Carrigan's arrest. Carrigan was arrested, bail was set, and a VOP hearing was scheduled.

Carrigan appeared with her counsel at the VOP hearing. Because Caserta was not present, another probation officer read into the record the allegations contained in Caserta's written report. Defense counsel conceded on behalf of Carrigan that the loitering conviction was a violation of her probation, and admitted that Carrigan had not completed the drug treatment program in New York. Defense counsel then proceeded to argue for a lesser sentence than that being recommended in the probation officer's report.

During the sentencing phase of the VOP hearing, the Court of Common Pleas judge stated, "I remember running into Officer Caserta in the hallway, and he says, you'll never believe what happened. [Carrigan] gets up there, she has this problem with her back, and so she needs medication." Carrigan's counsel objected to that statement as an "*ex parte* communication" between the probation officer and the judge that warranted a dismissal of the VOP charges. The Court of Common Pleas judge overruled the objection, ruling that *ex parte* communications happen between probation officers and judges "all the time" and "are appropriate." The judge added that the communication occurred before Caserta even had filed his VOP report and at a time where no VOP hearing was pending or even scheduled. The judge then further elaborated on his conversation with Caserta:

> the docket sheet, that original sentence was for 180 days at Level 5 supervision.

**1.** There are several references, throughout the record, to the initial sentence for possession of drug paraphernalia as being for 185 (not 180) days at Level 5. However, according to

**2.** 11 *Del. C.* § 1321.

I run into [Caserta] in the hallway, he says, you're not going to believe what happened. [Carrigan] has to take medication, so she doesn't qualify for the program anymore. They threw her out. Here's what I [Caserta] think we ought to do, I'm just going to require her to ... call me once a week, come in and give urines, and as long as they're clean, we don't have a problem.... [A]s long as she does that, then I don't have a problem with the fact that she got thrown out of this residential program. I [the judge] said, fine. According to [Caserta's] report, you [Carrigan] didn't do that. Not only that, you [Carrigan] were convicted of loitering.

After a lengthy discussion with Carrigan about her circumstances, the Court of Common Pleas judge revoked her probation and sentenced her to 180 days at Level 5, with credit for time served and no probation to follow. Thereafter, Carrigan filed a Motion for a New Trial and Recusal, requesting a new VOP hearing to be held before a different Court of Common Pleas judge. Carrigan's motion alleged a violation of due process due to the *ex parte* communication" between the judge and the probation officer. Her recusal application was conditioned upon the grant of a new VOP hearing. Her motion stated: "If the defendant is granted a new hearing, the defendant requests that such hearing be heard before a judicial officer other than her original sentencing judge."

A hearing on the New Trial and Recusal motion was held, and Caserta testified at that hearing. Caserta referred to the hallway conversation and a later conversation with the judge in a courthouse elevator. According to Caserta, after Carrigan returned to Delaware from New York:

Ms. Carrigan then began to do what she normally did, and that was to be evasive, manipulative, and then lying. She did not call me on a regular basis, I let it go. I then saw the judge, and I said, Your Honor, I'm afraid that Ms. Carrigan, I'm going to have to violate her for sure.... I'm going to have to write a violation report. Ms. Carrigan, of all of the work that we tried to do for her, and I tried to do for her, went down the tubes. I'm going to have to violate her. I'll send you a report.

The Court of Common Pleas judge also confirmed Caserta's recollection, stating "I do remember [Caserta] telling me ... on an elevator, that [Carrigan] wasn't coming in and she wasn't doing what she was supposed to do, [that] she was back to her old way of living, and that he was going to violate her."

The Court of Common Pleas judge denied Carrigan's motion for a new VOP hearing on the following grounds: (i) because Caserta was not counsel, his discussion with the Court of Common Pleas judge was not a prohibited *ex parte* communication;[3] (ii) although Caserta was assigned to the Department of Corrections, and not to the court, the law authorizes probation officers to submit violation and progress reports to the court; (iii) Carrigan was correctly found in violation of her probation, because she had admitted to the violation during the hearing; and (iv) Carrigan was properly sentenced to 180 days at Level 5 because she was fully aware that the original Level 5 sentence would be imposed if she violated her probation again.

Carrigan appealed that ruling to the Superior Court. The Superior Court found

**3.** The Court of Common Pleas judge quoted *Black's Law Dictionary* as defining an *ex parte* communication as a "prohibited communication between counsel and the Court when opposing counsel is not present." *See also* BLACK'S LAW DICTIONARY 597 (7th ed.1999) (same).

that the record reflected that the Court of Common Pleas judge did not initiate the conversation and that the information Caserta conveyed in these conversations was essentially the same as in the presentence report.[4] After noting the similarity between Delaware and federal probation systems, he affirmed on the ground that the conversations were not *ex parte* and therefore Carrigan's due process rights were not violated.[5] This appeal followed.

## II. Discussion

### A. Carrigan's Claim that the Conversations Between the Trial Judge and the Probation Officer Violated Her Right to Due Process

 Carrigan claims that the informal conversations between the Court of Common Pleas judge and the probation officer violated Carrigan's due process right to an impartial judge. Particularly, Carrigan argues that the Superior Court erred in its consideration of the federal scheme because the Delaware General Assembly has expanded the scope of a probation officer's duties.[6] We review an alleged violation of constitutional rights *de novo*.[7]

The Superior Court, relying on federal law, concluded that those communications did not violate Carrigan's due process rights because a "probation officer is an officer of the court."[8] Under the federal system, probation officers are appointed by and serve under the direction of the court and are considered an "arm of the court."[9] Given that relationship, communications between judges and probation officers are not prohibited *ex parte* communications at the federal level.[10]

Delaware differs from the federal scheme in the sense that probation officers by statute are employees of the Department of Correction[11] with law enforcement

---

**4.** *Carrigan v. State*, 2007 WL 3378657, at * 4 (Del.Super.).

**5.** *Id.* The Superior Court relied on *United States v. Burnam*, 192 Fed.Appx. 103 (3d Cir. 2006) and *Goldstein v. Delaware Bureau of Adult Corrections*, 931 F.Supp. 284, 298 (D.Del.1996). *See also infra* note 9.

**6.** For example, probation officers "may be tasked to participate in joint operations with federal authorities while in the performance of the lawful duties of their employment." 11 *Del. C.* § 4321(e).

**7.** *Martini v. State*, 2007 WL 4463586, at *2 (Del.Supr.) (citing *Bentley v. State*, 930 A.2d 866, 871 (Del.2007)) *accord Seward v. State*, 723 A.2d 365, 375 (Del.1999); *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 481 (Del.1992).

**8.** *Carrigan v. State*, 2007 WL 3378657, at *3 (Del.Super.).

**9.** *See* 18 U.S.C.A. § 3602(a) ("A district court of the United States shall appoint qualified persons to serve ... as probation officers within the jurisdiction and under the direction of the court making the appointment."); *see also United States v. Bernardine*,

237 F.3d 1279, 1283 (11th Cir.2001) ("A probation officer is an 'arm of the court.' "); *accord United States v. Horvath*, 492 F.3d 1075, 1078 (9th Cir.2007); *United States v. Nash*, 438 F.3d 1302, 1305 (11th Cir.2006); *United States v. Aspinall*, 389 F.3d 332, 349 (2d Cir.2004); *United States v. York*, 357 F.3d 14, 22 n. 6 (1st Cir.2004); *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir.1998); *United States v. Rosengard*, 949 F.2d 905, 908 (7th Cir.1991); *United States v. Johnson*, 935 F.2d 47, 50 (4th Cir.1991). An unreported Third Circuit decision is also in accord. *See United States v. Burnam*, 192 Fed.Appx. 103, 106 n. 2 (3d Cir.2006).

**10.** *Davis*, 151 F.3d at 1306.

**11.** 11 *Del. C.* § 4302(16) (" 'Probation and parole officer' means an employee of the Department [of Correction] with the qualifications, and having powers and responsibilities ... provided by law or determined by the Department...."). As a result, the Superior Court's reliance on *Goldstein v. Delaware Bureau of Adult Corrections*, 931 F.Supp. 284, 298 (D.Del.1996) was misplaced because *Goldstein* involved a special investigator appointed by the court. *See id.* at 296.

powers.[12] Carrigan is correct, however, in that the Delaware General Assembly has expanded the scope of a probation officer's duties. For example, a probation officer may be tasked to participate in "Operation Safe Streets"[13] or the Governor's Task Force.[14] On the other hand, Delaware does follow the federal scheme in this respect—probation officers supervise probationers in compliance with judicial orders, report progress of the probationer (or lack thereof), arrest probationers who have violated conditions of probation, and recommend an appropriate sentence modification to the sentencing judge.[15]

In the present context, the fact that a probation officer is not directly employed by the court is not outcome determinative. Indeed, we note that court staff who assist judges in the performance of their duties also have been employed by other governmental entities.[16] Rather, the analysis turns upon the duties performed and whether the communications are authorized by law.[17] That is, the context and

---

**12.** 11 *Del. C.* § 4321(d) (providing that "[p]robation and parole officers shall exercise the same powers as constables under the laws of [the] State [of Delaware]"); 11 *Del. C.* § 222(14) (defining "law enforcement officers" to include constables).

**13.** "Operation Safe Streets" is a statewide joint police and probation program that is designed to apprehend offenders who are not complying with the terms of their probation.

**14.** The Governor's Task Force consists of officers from Probation and Parole, as well as members of the State Police, and is designed to provide assistance to probation officers by conducting investigations to ensure probationer compliance with laws and technical conditions of probation.

**15.** *See* 11 *Del. C.* § 4334(b):

The Commissioner, or any probation officer, when in the Commissioner's or probation officer's judgment there has been a violation of any condition of probation or suspension of sentence, may arrest such probationer without a warrant, or may deputize any other officer with power of arrest to do so by giving that officer a written statement setting forth that the probationer has, in the judgment of the Commissioner or probation officer, violated the conditions of probation or suspended sentence. The written statement delivered with the probationer by the arresting officer to the official in charge of the place of detention shall be sufficient warrant for the detention of the probationer. When an arrest is made by a probation officer, the Department shall present to the detaining authority a written statement of the circumstances of violation.

*Cf.* 18 U.S.C.A. § 3606:

If there is probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. A probation officer may make such an arrest wherever the probationer or releasee is found, and may make the arrest without a warrant. The court having supervision of the probationer or releasee, or, if there is no such court, the court last having supervision of the probationer or releasee, may issue a warrant for the arrest of a probationer or releasee for violation of a condition of release, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found.

**16.** For example, before October 1, 1987, all Superior Court Prothonotary staff were employed by county governments. 66 Del. Laws 185; 9 *Del. C.* § 9114 (Revisor's note). Canon 3.A.(4) of the Delaware Judges' Code of Judicial Conduct, which predates this revision, contemplates that judges may communicate *ex parte* with their court staff. *See* Delaware Judges' Code of Judicial Conduct Canon 3.A(4) (comment) ("The proscription against communications concerning a proceeding ... does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities.").

**17.** *See generally* Canon 3.A(4) of the Delaware Judges' Code of Judicial Conduct (providing

scope of the exercise of a probation officer's duties to the court, not that person's employer, determines whether she is an "officer of the court"[18] and whether the communication is inappropriate and a violation of due process. When authorized by law to carry out probation supervision duties similar to their federal counterparts, Delaware probation officers serve as an "arm of the court."

The communications at issue here were authorized by law and were not. *ex parte* because they were made in the exercise of a probation officer's duty to communicate to a sentencing judge. Several provisions found in Chapter 43 of Title 11 (Sentencing, Probation, Parole and Pardons) either require or authorize probation officers to submit reports to the court.[19] The Superior Court correctly recognized that "Delaware law ... authorizes a communication between a judge and [a] probation officer without the defendant present."[20] While at the time of the two verbal "reports," Caserta had not filed his violation report and no VOP hearing had been scheduled,[21] the discussions were still authorized by law

that "[a] judge should ..., *except as authorized by law*, neither initiate nor consider *ex parte* or other communications concerning a pending or impending procedure") (emphasis added). The commentary to this provision provides:

> The proscription against communications concerning a proceeding ... is not intended to preclude communications between a judge and lawyers, or parties if unrepresented by counsel, concerning matters which are purely procedural, such as those which pertain to scheduling, and which in no way bear on the merits of the proceeding. However, such communications should, as soon as practicable, be fully disclosed by the judge to all lawyers, or parties if unrepresented by counsel, involved in the proceeding.

Delaware Judges' Code of Judicial Conduct Canon 3.A(4) *(comment)*. A comment to Canon 2.B, expressly refers to communications between judges and probation officers. The comment states that "[e]xcept in the course of the judge's official duties, a judge should not initiate a communication of information to ... a probation ... officer but may provide to such persons information in response to a formal request." Delaware Judges' Code of Judicial Conduct Canon 2.B (comment). Canon 2.B provides that "[a] judge should not ... convey or permit others to convey the impression that they are in a special position to influence the judge."

**18.** For example, we have explained that all members of the bar of the Supreme Court of Delaware are "officers of the Court." *In re Abbott*, 925 A.2d 482, 487 (Del.2007). In this

regard, lawyers have a dual responsibility, to both their client and to the Court. *See id.*

**19.** *See* 11 *Del. C.* § 4321(c) (stating that probation officers "shall make ... reports in writing and perform ... other duties which the rules and regulations of the Department [of Correction] require, or which the court ... may require"); § 4332(a) (providing, relevantly, that "before any ... conditions [of probation] are modified, a report by the Department [of Correction] shall be presented to and considered by the court"); § 4334(c) (referring to the violation of probation report which must be submitted to the court "in writing").

**20.** *Carrigan*, 2007 WL 3378657, at *4.

**21.** Under 11 *Del. C.* § 4334, where a probation officer believes that a probationer has violated the terms of the probation, the probation officer must "submit in writing a report showing in what manner the probationer has violated the conditions of probation" and may arrest the probationer, with or without a warrant. 11 *Del. C.* § 4334(a), (b) and (c). The VOP procedure is commenced *by the court* sending the probationer "a notice to appear to answer to [the] charge of violation." 11 *Del. C.* § 4334(a). *See also* Ct. Com. Pl.Crim. R. 32.1(a) (requiring that the probationer be given "[w]ritten notice of the alleged violation; [d]isclosure of the evidence against the person, [a]n opportunity to appear and to present evidence in the person's own behalf, [t]he opportunity to question adverse witnesses; and [n]otice of the person's right to retain counsel").

and were not improper *ex parte* communications.[22]

Even if the communications were improper—and they were not because they were authorized by law—Carrigan has not demonstrated prejudice. Caserta's written violation report, which was disclosed to Carrigan, did include the same information that had been verbally communicated to the judge—even though the report did not specifically reference the earlier conversations.[23] Moreover, there is "nothing in the record to suggest that the judge considered the oral communications"[24] in finding that Carrigan had violated her probation or in sentencing her. Carrigan admitted to having violated her probation during the VOP hearing,[25] and she was fully aware, from the earlier proceedings before the same judge, that "if she violated again she would receive the full term of her [original Level 5] sentence."[26] We conclude that there is no merit to Carrigan's due process claim that her rights were violated.[27]

Although there is no merit to Carrigan's claim, we emphasize that we do not condone off-the-record communications by probation officers to the court on the merits of an alleged violation of probation. A probationer is entitled to disclosure of the evidence against her.[28] If a probation officer's communication is not in writing, "the trial judge must at least maintain a proper written record of the *ex parte* communication and thereafter provide the parties the opportunity to be heard on the issues relating to, or arising from, the communication."[29] The better practice is for out of court communications by probation officers to be in writing to avoid the issues raised in this case. A written communication ensures accuracy, the neutrality of the presiding judge, and will ensure all parties the same opportunities to address the court.

## B. Carrigan's Claim that the Judge Erred by Failing to Recuse Himself from the VOP Hearing

Carrigan's second claim is that the Court of Common Pleas judge erred by not recusing himself from the VOP hearing. Carrigan, however, only asked for recusal in the event of the grant of a new VOP hearing. Because the claim Carrigan now raises was not fairly presented below, we need not consider it.[30] Even if we did, Carrigan has not demonstrated grounds for recusal of the Court of Common Pleas judge.

---

**22.** Moreover, it is undisputed that the Court of Common Pleas judge did not "initiate" either conversation with Caserta. Delaware Judges' Code of Judicial Conduct Canon 2.B; 3.A(4). The only response the judge made to the probation officer's communication was the word "fine." *Carrigan v. State*, 2007 WL 3378657, at *4 (Del.Super.).

**23.** *Id.*

**24.** *Id.*

**25.** *See Collins v. State*, 897 A.2d 159, 161 (Del.2006) ("[A] defendant's admission of the alleged crime is considered sufficient competent evidence to revoke probation...."). *See also Brothers v. State*, 2002 WL 31127529, at *1 (Del.Supr.) (finding no due process violation even though the defendant was not pro-

vided with the probation officer's reports, where the defendant admitted to violating the probation).

**26.** *Carrigan*, 2007 WL 3378657, at *4.

**27.** *Cf. Hester v. State*, 2002 WL 243323, at *2 (Del.Supr.) (finding no due process violation where a Superior Court judge communicated with a Treatment Access Center (TASC) counselor concerning the defendant's progress while he was on probation).

**28.** Ct. Com. P.Crim. R. 32.1(a)(B).

**29.** *Yost v. Johnson*, 591 A.2d 178, 182 (Del. 1991).

**30.** Supr. Ct. R. 8.

## III. Conclusion

The judgment of the Superior Court is AFFIRMED.