IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BOOKER WALLACE, | § | |
| | § | No. 304, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No. 2201005596 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: July 10, 2024
Decided: August 20, 2024

Before **SEITZ,** Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 20th day of August, 2024, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) In May 2023, Booker Wallace pleaded guilty to assault in the first degree, unlawful sexual contact in the third degree, strangulation, endangering the welfare of a child, and possession of a deadly weapon during the commission of a felony ("PDWDCF"). Wallace agreed to ask for a sentence of no less than seven years, and the State agreed to ask for an aggregate sentence of no more than 14 years, of unsuspended Level V incarceration.[1] The Delaware Sentencing Accountability

---

[1] Under 11 *Del. C.* § 4204(c)(5), a sentence involving an Accountability Level V Sanction "consists of the commitment of the offender to the Department of Correction for a period of incarceration . . . ."

Commission ("SENTAC") guidelines recommend a presumptive aggregate sentence of up to 12 years at Level V.[2] The Superior Court sentenced Wallace to 21 years at Level V.

(2)     In this direct appeal, Wallace argues that the Superior Court erred by failing to provide a "statement of reasons" sufficient to satisfy the requirements of 11 *Del. C.* § 4204(n)[3] and Delaware Supreme Court Administrative Directive No. 76. Wallace also contends that the Superior Court may have sentenced him with a closed mind because the court exceeded both the SENTAC presumptive sentence and the State's 14-year recommendation. He requests that this Court remand for a new sentencing hearing.

(3)     As a consequence of Wallace's guilty pleas, there was no trial in this case. We therefore draw the following background facts from police reports, the presentence investigation report, and the transcript of Wallace's sentencing hearing.

(4)     On January 16, 2022, just before midnight, Wallace returned to the home he shared with his ex-girlfriend, Elizabeth Lash, and their 4-month-old son.

---

[2] The SENTAC guidelines provide for the following presumptive sentences:  for both assault in the first degree and PDWDCF (Class B violent felonies), two to five years at Level V with the first two years not subject to suspension; for strangulation (Class D violent felony), up to two years at Level V; for unlawful sexual contact in the third degree (Class A misdemeanor), up to 12 months at Level II; and for endangering the welfare of a child (Class A misdemeanor), up to 12 months at Level I.  SENTAC Benchbook 2023 at 2, 4, 7, 12, 18, available at: https://cjc.delaware.gov/wp-content/uploads/sites/61/2022/12/Benchbook-2023-120122.pdf ("SENTAC Benchbook 2023").

[3] In his opening brief, Wallace refers to the applicable statute as "11 *Del. C.* § 4205(n)"—this appears to be a typographical error.

After seeing Lash on her computer, Wallace became angry and asked Lash to speak with him in the second-floor guest bedroom. When Lash entered, Wallace asked her if she was dating anyone, and she answered that she was not. Concerned that the conversation was "going in a bad direction," Lash left the room to go downstairs with their son.[4]

(5)     As she walked down the stairs, Wallace punched Lash in the back of the head, causing her to fall. As she got up, Wallace attacked Lash with a serrated knife, stabbing her repeatedly in the back of the shoulders and chest. Wallace attempted to stab Lash in the face, but she blocked the knife with her hand. Lash eventually fell to the floor and Wallace strangled her, causing her to lose consciousness. Once she regained consciousness, Wallace pulled down her pants, touched her, and told her, "'I think I will have sex with you []now.'"[5] Wallace stopped touching Lash but remained in the home and told Lash he was "waiting for [her] to die."[6]

(6)     Wallace lingered in the home, antagonizing Lash for the next 45 minutes. While he waited, he changed the password on Lash's cell phone so that she would be unable to call for help. Wallace played Lash a rap song about a man who killed his girlfriend and asked her "if [she] had any last words and who [she]

[4] App. to Answering Br. at B6.
[5] *Id.* at B6, B43.
[6] *Id.* at B6, B43–44.

wanted [their son] to live with."[7] He also brought their son in and told Lash, "don't worry, he won't remember this," before making him a bottle, feeding him, and putting him in another room.[8]

(7) Wallace made a number of confessions to Lash during this time. He told her that he had planned to kill her that night in the guest room and brought the knife up for that purpose, but that she left the room too quickly; that he had set her Philadelphia apartment on fire by burning paper near her computer so that she would move in with him; that he had sabotaged condoms to get her pregnant; and that he had a hidden camera in her bedroom and secretly watched her for months.

(8) Wallace eventually decided to leave the home. He first called his mother and told her: "Mom I just stabbed [Lash]. I will be going to jail. I will be on the run 'til the cops catch me. I will try and call you periodically."[9] He then called the police to report the attack before leaving. After leaving, Wallace called Lash's sister and told her he stabbed Lash and that she needed help. Around 12:45 a.m., Wilmington police officers were dispatched to the residence, and upon their arrival, they knocked on the front door. Lash opened the door crying and bloodied. She told officers that Wallace, who was her child's father and also lived in the home, had "freaked out" and "stabbed her" because he thought she was with someone

---

[7] *Id.* at B40–41.
[8] *Id.*
[9] *Id.* at B6.

4

else.[10] She told the officers that Wallace had just left. Lash was transported to the hospital for treatment of her injuries, which included stab wounds to her shoulders and chest and a contusion on the back of her head.[11]

(9) Wallace surrendered to the police two-and-a-half months later and was indicted by a New Castle County grand jury on charges of attempted murder in the first degree, PDWDCF, strangulation, unlawful sexual contact in the first degree, malicious interference with emergency communications, offensive touching, violation of privacy, and endangering the welfare of a child. One month before Wallace's trial was scheduled to begin, Wallace pleaded guilty to the lesser included offenses of assault in the first degree and unlawful sexual contact in the third degree, strangulation, endangering the welfare of a child, and PDWDCF.

(10) The Truth in Sentencing guilty plea form, which Wallace voluntarily signed, indicated that Wallace faced a minimum of four and a maximum of 60 years Level V incarceration. As mentioned, the presumptive SENTAC sentence was up to 12 years Level V incarceration. After engaging in the standard plea colloquy with Wallace, the court accepted his guilty pleas and, in accordance with the parties' request, ordered a presentence investigation.

---

[10] *Id.*
[11] *Id.* at B3, B6–7.

5

(11)  Two and a half months later, Wallace appeared for sentencing.  At the outset of the sentencing hearing, the court told counsel that the court had "thoroughly reviewed the entire presentence report and . . . supplemental information [including] all the letters received in support of Mr. Wallace[,] and also the psycho-forensic report."[12]  The court heard the arguments of counsel and statements from both Wallace and Lash.  The court then discussed the mitigating and aggravating factors that it deemed relevant to Wallace's sentence. Because the court's "statement of reasons" is central to this appeal, the entire statement follows:

> I find the following aggravators and mitigators, which I will and have taken into account in deciding the appropriate sentence.  I agree that the defendant suffers from mental health issues that seem severe and they seem to have been untreated for a long time.  I agree he has a relatively limited criminal history.  I'm glad he didn't put Ms. Lash through a trial.  The trauma she's already sustained and then to have a trial on top of it would just be awful.  And I do  believe he's standing here today remorseful for . . . unspeakable acts.
>
> So the aggravators I see are excessive cruelty.  I won't put Ms. Lash through it again by taking [*sic*] off all the factors that caused me to conclude that.  They are all laid out in the presentence report and they're horrifying.  I will say it is a miracle today that Ms. Lash is alive given the savagery and your brutality and the way you carved her with a knife.  The pictures are just unspeakable of the damage done to her body, not to mention her emotional state, to her psyche and she will live with that the rest of her li[f]e . . . .

---

[12] App. to Opening Br. at A13–14.

I also think it's excessive cruelty because you were there for quite some time. And then instead of calling the police immediately you told her you wanted to have sex with her and you didn't use polite terms for it while she was lying there bleeding. So that aggravating factor carries a lot of weight. I also find the aggravating factor for the reasons I just stated would support undue depreciation of the offense. I certainly think you need correctional treatment.

And I'm troubled - - although it was two counts of simple assault of a different victim, I'm troubled by that prior charge. And you were found guilty of contempt for a violation. Contempt for a violation of a court order in Pennsylvania. So weighing all of those factors and the significant and severe potentially lethal injuries to Ms. Lash, I'm imposing the follow[ing] sentence . . . .[13]

(12) The court then sentenced Wallace to a total of 21 years Level V incarceration. His sentence by offense is: 25 years, suspended after 15 years, for assault in the first degree; 20 years, suspended after four years, for PDWDCF; eight years, suspended after two years, for strangulation; one year, suspended for one year, for unlawful sexual contact in the third degree; and one year, suspended for one year, for endangering the welfare of a child.

(13) The Sentence Order entered after the sentencing hearing listed the mitigating factors as (i) active and positive involvement in the lives of his children, (ii) strong family support, and (iii) mental health issues. It listed the aggravating

---

[13] *Id.* at A31–33.

factors as (i) excessive cruelty, (ii) undue depreciation of the offense, (iii) need for correctional treatment, and (iv) criminal history and contempt of a violation order.

(14) After imposing Wallace's sentences and announcing certain conditions—Wallace is to have no contact with Ms. Lash, her residence, or her family and is to undergo domestic violence evaluation and treatment—the sentencing judge asked Wallace if he had any questions, and he had none. The court posed one final question to counsel, "Did I miss anything?" Defense counsel politely responded, "No, Your Honor."[14]

(15) Wallace argues that the Superior Court erred by failing to provide a "statement of reasons" for exceeding the SENTAC guidelines as required under 11 *Del. C.* § 4204(n) and Administrative Directive No. 76. In Wallace's view, the court's discussion of aggravating and mitigating factors was insufficient. He asserts that "the trial court should be required to discuss why the court is going over the presumptive [sentence]."[15] Wallace also argues that, because the Superior Court went over the presumptive sentence and the State's proposed sentence, the court may have sentenced Wallace with a closed mind.

---

[14] *Id*. at A36.
[15] Opening Br. at 10.

(16)     The State responds that a sentencing judge's discussion of mitigating

and aggravating factors, as occurred here, is sufficient to satisfy both § 4204(n) and

Administrative Directive No. 76.  The State also argues that the Superior Court

> rather than exhibiting a closed mind . . . sentenced Wallace
> with an open mind and after a careful review of all relevant
> information available . . . including the presentence report,
> Wallace's statements in the PSI report, the defense's
> mitigation materials, Wallace's remarks to the court, his
> counsel's arguments, the aggravating and mitigating
> factors, and the parties' recommendations in determining
> the sentence to be imposed.[16]

(17)     Section 4204(n), states that:

> [w]henever a court imposes a sentence inconsistent with
> the presumptive sentences adopted by the Sentencing
> Accountability Commission, such court shall set forth on
> the record its reasons for imposing such penalty.[17]

(18)     Administrative Directive No. 76, published by this Court in September

1987 to encourage Delaware's trial courts to implement, "insofar as possible,"[18] the

recently developed SENTAC standards, states that:

> [a]ny judge who finds a particular sentencing standard
> inappropriate in a particular case because of the presence
> of aggravating or mitigating or other relevant factors need
> not impose a sentence in accordance with the standard but
> such judge shall set forth with particularity the reasons for

---

[16] Answering Br. at 37–38.
[17] 11 *Del. C.* § 4204(n).
[18] App. to Answering Br. at B1–2.

the deviation using the forms provided by the Commission.[19]

Immediately following this instruction is a caveat:

The sentencing standards are considered voluntary and nonbinding; thus, no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards.[20]

(19) This Court typically "reviews a criminal sentence for [an] abuse of discretion,"[21] but claims raised "for the first time on appeal . . . are subject to our plain error review."[22] Although the sentencing judge gave Wallace an opportunity to register objections after she passed sentence, he declined to do so. Accordingly, we review his contentions for plain error.[23]

(20) Under the plain-error standard, we review only for material defects apparent on the face of the record.[24] Errors are plain only when they are "basic, serious and fundamental in their character, and which clearly deprive an accused to

---

[19] *Id*. at B2.

[20] *Id*.

[21] *Cooling v. State*, 308 A.3d 1193, 2023 WL 8278529, at *2 (Del. Nov. 30, 2023) (TABLE).

[22] *See White v. State*, 243 A.3d 381, 396 (Del. 2020); *Fisher v. State*, 829 A.2d 141, 2003 WL 1443050, at *2 (Del. Mar. 19, 2003) (TABLE) ("having failed to raise the claims at sentencing or on appeal in his Rule 35(b) motion, Fisher has waived review of the claims in the absence of plain error.").

[23] We understand Wallace's statement of the "question presented" in his opening brief to concede that plain-error review is appropriate. *See* Opening Br. at 6 ("This issue was not raised below[;] however, it is an issue that impacts [Wallace's] substantial rights."). The State, on other hand, in its answering brief, explicitly argues in favor of the plain-error standard. Wallace did not submit a reply brief, choosing as we see it, not to contest the State's statement of standard of review.

[24] *Fisher*, 2003 WL 1443050, at *2.

a substantial right, or which clearly show manifest injustice."[25] "To constitute 'plain error,' the error 'must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.'"[26]

(21) "Our review of a criminal sentence generally ends upon a determination that the sentence is within the statutory limits prescribed by the legislature."[27] Where a sentence falls within the statutory limits, the reviewing court will consider only whether the sentence given was "based on factual predicates which are false, impermissible, or lack minimum reliability, [or reflect] judicial vindictiveness or bias, or a closed mind."[28] "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[29] A sentencing judge has broad discretion to consider "information pertaining to a defendant's personal history and behavior which is not confined exclusively to conduct for which the defendant was convicted."[30]

---

[25] *Id.*

[26] *Id.* (internal citations omitted).

[27] *Mason v. State*, 315 A.3d 445, 2024 WL 1461254, at *2 (Del. Apr. 3, 2024) (TABLE); *Siple v. State*, 701 A.2d 79, 83 (Del. 1997).

[28] *Cooling*, 2023 WL 8278529, at *2 (internal citations omitted); *see also Fink v. State*, 817 A.2d 781, 790 (Del. 2003).

[29] *Cruz v. State*, 990 A.2d 409, 416 (Del. 2010) (internal citations omitted).

[30] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992) (internal citations omitted).

(22) "[A] sentence is not illegal simply because it exceeds the SENTAC guidelines."[31] We have held, moreover, that "[t]he Superior Court's failure to follow the nonbinding SENTAC sentencing guidelines, or to state its reasons for not following the guidelines, is simply no basis for appeal, as this Court has repeatedly held."[32] This is not to say that our trial courts are free to disregard the requirements of § 4204(n) and our Administrative Directive No. 76.

(23) As to § 4204(n), we have encouraged "all sentencing judges [to] be mindful of the statutory requirement that the judge state on the record the reasons for any sentence [that] is inconsistent with the SENTAC presumptive sentence."[33] In this case, we are satisfied that the Superior Court stated its "reasons for imposing such penalty," as required by 11 *Del. C.* 4204(n), through its discussion of aggravating and mitigating factors.[34] The question that remains is whether the

[31] *Smith v. State*, 287 A.3d 1159, 2022 WL 17087056, at *2 (Del. Nov. 18, 2022) (TABLE) (citing *Richmond v. State*, 279 A.3d 815, 2022 WL 2276282, at *2 (Del. June 22, 2022) (TABLE)).

[32] *Wilson v. State*, 692 A.2d 416, 1997 WL 90772, at *1 (Del. Feb. 21, 1997) (TABLE) (citing *Mayes*, 604 A.2d at 846; *Gaines v. State*, 571 A.2d 765, 766–67 (Del. 1990); *see also Siple*, 701 A.2d at 81 ("Delaware has not provided for appellate review of a criminal sentence on the sole basis that it deviated from the sentencing guidelines.").

[33] *Gibson v. State*, 244 A.3d 989, 2020 WL 7213227, at *3 (Del. Dec. 3, 2020) (TABLE).

[34] *See Smith*, 2022 WL 17087056, at *2 (no violation of 11 *Del. C.* § 4204(n) where "the sentencing transcript reflects that the court identified . . . [and] sufficiently explained on the record the reasons for the sentence it imposed); *Anderson v. State*, 286 A.3d 503, 2022 WL 10801507, at *2 (Del. Oct. 18, 2022) (TABLE) (no violation of 11 *Del. C.* § 4204(n) where "the court provided a detailed statement of its reasons for imposing the . . . sentence" and considered both aggravating and mitigating factors); *Lloyd v. State*, 284 A.3d 1017, 2022 WL 4372760, at *3 (Del. Sept. 22, 2022) (TABLE) (no violation of 11 *Del. C.* § 4204(n) where "[a]t sentencing, the court discussed several factors it considered in making its determination . . . ."); *Gibson*, 2020 WL 7213227, at *2–3 (sentence exceeding SENTAC presumptive sentence upheld even though the sentencing judge "fail[ed] to explain on the record . . . why he sentenced [the defendant] to greater than the

court's discussion satisfied Administrative Directive No. 76's mandate that a court deviating from the guidelines "set forth with particularity the reasons for the deviation [.]"[35]

(24) The purpose of Administrative Directive No. 76 is to "allow [for] appellate review by this Court."[36] Because the SENTAC guidelines are voluntary, when a sentence is within the statutory limit, as Wallace's sentence is,[37] the court's failure to state its reasons for a deviation cannot be the sole basis of an appeal.[38] An otherwise legal sentence can only be appealed if there is an indication that the court committed error by imposing the sentence based on alleged: "unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a 'closed mind . . . [.]'"[39]

(25) Apparently recognizing Administrative Directive 76's purpose, Wallace argues that the court's failure to provide a statement of reasons for deviation from the presumptive sentence with particularity indicates that the court sentenced Wallace with a closed mind.[40]

---

presumptive sentence. . . [because] the sentence imposed can be easily explained by reference to SENTAC's guidelines for an aggravated sentence based upon prior criminal history.").

[35] App. to Answering Br. at B1–2.

[36] *Martini v. State*, 941 A.2d 1019, 2007 WL 4463586, at *5 (Del. Dec. 21, 2007) (TABLE).

[37] App. to Answering Br. at B31. Wallace faced up to 60 years at Level V.

[38] *Wilson*, 1997 WL 90772, at *1 (citing *Mayes*, 604 A.2d at 846; *Gaines*, 571 A.2d at 766–67); *see also Siple*, 701 A.2d at 81.

[39] *Siple*, 701 A.2d at 83.

[40] Opening Br. at 13.

(26)    But Wallace does not explain how the Superior Court's review of the factors it considered at his sentencing hearing was not the deliberative product of an open-minded jurist. The court identified the aggravating and mitigating factors—including excessive cruelty, need for correctional treatment, undue depreciation, and criminal history and contempt of a violation order (aggravating) and mental health issues, remorse, limited criminal history, and familial involvement (mitigating). The court stated that the aggravating factor of excessive cruelty "carrie[d] a lot of weight,"[41] and issued the sentence after "weighing all of those factors and the significant and severe potentially lethal injuries to Ms. Lash."[42]    The court accordingly stated the reasons for the deviation with particularity enough to enable effective appellate review by the Court.

(27)    For the reasons set forth above, we conclude that Wallace's sentence was not plainly erroneous.

---

[41] App. to Opening Br. at A32. According to the SENTAC Benchbook, the sentencing guidelines assign longer sentences to a Class B or Class D violent felony where the aggravating factor of "excessive cruelty" is found. For Class B violent felonies, the sentence is up to 25 years and for Class D it is up to eight years. As the State notes in its Answering Br. at 31 & n.32, the sentence imposed may be within the SENTAC guidelines in light of the defendant's criminal history. *See* App. to Answering Br. at B62, B68; SENTAC Benchbook 2023 at 34–35, 47–48.

[42] App. to Opening Br. at A33.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice