**Michael F. SIPLE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 453, 1996.**

Supreme Court of Delaware.

Submitted: Sept. 9, 1997.
Decided: Oct. 6, 1997.

---

Nancy Jane Perillo and J. Brendan O'Neill, Office of the Public Defender, Wilmington, for appellant.

William E. Molchen, Department of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

The defendant-appellant, Michael F. Siple ("Siple"), was charged in an indictment with committing thirty-seven crimes, including multiple counts of Unlawful Sexual Intercourse in the First Degree, Burglary in the First and Second Degree, Robbery in the First and Second Degree, Kidnaping in the Second Degree, Unlawful Imprisonment, Misdemeanor Theft, and Criminal Mischief. Siple entered guilty pleas to two counts of Unlawful Sexual Intercourse in the First Degree. Siple was sentenced by the Superior Court to two consecutive terms of life imprisonment at Level V without parole.

Siple has raised four issues in this direct appeal of his sentences. First, Siple contends that this Court should implement procedures for reviewing deviations from the Sentencing Accountability Commission's ("SENTAC") sentencing guidelines. Second, Siple contends that the sentencing judge erred, as a matter of law, by not considering his mental incapacity as a mitigating factor. Third, Siple contends that the sentencing judge erred, as a matter of law, in construing the aggravating factor of "repetitive criminal conduct" in the SENTAC sentencing guide-

lines. Finally, Siple contends that the sentencing judge had a "closed mind."

We have concluded that the issues raised by Siple are without merit. Delaware has not provided for appellate review of a criminal sentence on the sole basis that it deviated from the SENTAC sentencing guidelines. Furthermore, applying this Court's traditional standard of appellate review to Siple's sentences, we have concluded that the other alleged errors are not supported by either the factual record or the applicable law. The judgments of the Superior Court are affirmed.

### Siple's Sentences

The thirty-seven crimes for which Siple was indicted arose out of a series of seven separate incidents that occurred in Delaware between November 1989 and October 1992. Siple entered into an agreement with the State whereby he would plead guilty to two counts of Unlawful Sexual Intercourse in the First Degree. These two counts would be amended to reflect the names of all seven rape victims. In return, the State agreed to enter a *nolle prosequi* for all of the remaining charges. There was no agreement on a sentence or sentence recommendation.

The sentence provided by statute for each of the two counts of Unlawful Sexual Intercourse in the First Degree ranges from a minimum incarceration of fifteen years without parole up to incarceration for life without parole. 11 *Del.C.* § 4205(b)(1). In Delaware, multiple criminal sentences *must* be served consecutively. 11 *Del.C.* § 3901(d). The State asserted that it would argue at Siple's sentencing for the maximum punishment of two life terms. Siple's attorney stated that she would argue for the imposition of the minimum mandatory punishment of fifteen years on each count, at the time of sentencing. A presentence investigation was ordered.

Another of Siple's attorneys spoke on Siple's behalf at the time of sentencing. He indicated that Siple was a good son, father, and friend. He attributed Siple's criminal conduct to a paraphilic coercive disorder; and argued that this type of mental impairment was a mitigating factor under the SEN-

TAC guidelines. Siple's attorney also contended there was an absence of aggravating factors, in particular, repetitive criminal conduct and excessive cruelty. He urged that Siple be sentenced in accordance with the minimum sentence under the SENTAC guidelines. The presumptive sentence under the SENTAC guidelines for Unlawful Sexual Intercourse in the First Degree, a class A felony, is fifteen years.

The State argued for an imposition of a sentence in excess of that suggested by the guidelines—two consecutive life sentences. The aggravating factors under the SENTAC guidelines, which the State cited in support of its argument were: prior violent criminal conduct; repetitive criminal conduct; excessive cruelty; lack of remorse; and the vulnerability of the victims. The State asserted that the mitigating factor of "mental impairment," as defined in the SENTAC guidelines, had not been established by Siple's psychiatric report. The State argued that it would "unduly depreciate the offenses" to impose any sentence less than two life terms of incarceration without parole.

Siple and five of the victims also made statements to the Superior Court at the time of sentencing. Each victim described the traumatic impact that Siple's crimes had on them and their families.[1] Each victim who addressed the issue of Siple's sentence requested that the Superior Court impose the maximum provided by law. Siple expressed remorse for his actions. He asked for a sentence that would permit him to be released from prison someday.

The Superior Court carefully considered the mitigating and aggravating factors. Siple was then sentenced to two consecutive terms of life imprisonment without the possibility of parole.

### Delaware Sentencing Guidelines

On July 18, 1984, the General Assembly enacted legislation that created the Sentencing Accountability Commission ("SENTAC"). That Commission was charged with "develop[ing] sentencing guidelines consistent with

the overall goals of ensuring certainty and consistency of punishment ...." 11 *Del.C.* § 6580(c). In creating those guidelines, the statute provided that SENTAC should "[e]stablish detailed objective criteria" relating to the crime and the offender. 11 *Del.C.* § 6581(c)(2). SENTAC was also directed to "[d]efine under what conditions of aggravation or mitigation and in what manner a sentencing judge may impose a sentence outside of the sentencing guidelines and recommend such mitigating and/or aggravating circumstances ..." 11 *Del.C.* § 6581(c)(3).

The SENTAC enabling legislation further provided that "[t]*he Commission* shall also recommend a procedure or a tribunal for appellate review by either the defendant or the State when sentences are imposed outside of the guidelines." 11 *Del.C.* § 6581(g) (emphasis supplied). No recommendation has been made. Siple contends that, in the absence of a recommendation from the Commission, this Court should *sua sponte* develop procedures to review sentences that deviate from the SENTAC guidelines.

On September 15, 1987, this Court issued Administrative Directive Number Seventy-Six. That directive implemented the sentencing guidelines that had been developed by SENTAC, and provided that,

> 2. Any judge who finds a particular sentencing standard inappropriate in a particular case because of the presence of aggravating or mitigating or other relevant factors need not impose a sentence in accordance with the standards but such judge shall set forth with particularity the reasons for the deviation using the forms provided by the Commission.

The administrative directive additionally provided that,

> 3. The sentencing standards are considered voluntary and nonbinding; thus, no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards.

---

1. The two victims who did not speak at sentencing were personally interviewed by the presentence officer. Each offered comments similar to the other victims' remarks during the sentencing proceeding.

Following the promulgation of the SENTAC guidelines, this Court has consistently held that it is without appellate jurisdiction in criminal cases to review challenges on the sole basis that a punishment deviated from the SENTAC sentencing guidelines. *See Mayes v. State*, Del.Supr., 604 A.2d 839, 845–46 (1992); *Gaines v. State*, Del.Supr., 571 A.2d 765, 767 (1990); *Ward v. State*, Del. Supr., 567 A.2d 1296, 1297–98 (1989).

### *Delaware Sentence Review*

■ This Court's Administrative Directive Number Seventy–Six requires that reasons be given for deviations from SENTAC's sentencing guidelines because this Court *does* have appellate jurisdiction to review criminal sentences on the basis of alleged: unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a "closed mind;" and any other illegality. *See Morales v. State*, Del.Supr., 696 A.2d 390, 394 (1997); *Mayes v. State*, Del.Supr., 604 A.2d 839, 842–43 (1992); *Hall v. State*, Del.Supr., 473 A.2d 352, 357 (1984); *Bailey v. State*, Del.Supr., 450 A.2d 400, 406 (1982) (quoting *Osburn v. State*, Del.Supr., 224 A.2d 52, 53 (1966)); *Tramill v. State*, Del.Supr., 425 A.2d 142, 145 (1980); *Jacobs v. State*, Del.Supr., 358 A.2d 725, 729–30 (1976). Except for these constitutional and legal constraints, it is well-established that appellate review of criminal sentences is limited in Delaware to a determination that the sentence is within the statutory limits. *Mayes v. State*, 604 A.2d at 842. Delaware, unlike the federal[2] and several state jurisdictions has not provided for appellate review of criminal punishments that deviate from sentencing guidelines. *See State v. Roth*, 95 N.J. 334, 471 A.2d 370, 385 (1984) (discussing different approaches to appellate review of sentences). *See also*, 42

*Pa.Cons.Stat.Ann.* § 9781(c), and *Minn.Stat.* § 244.11.

■ At the present time, there is no constitutional or statutory right in Delaware to appeal a criminal punishment on the sole basis that it deviates from the SENTAC sentencing guidelines. *Gaines v. State*, Del. Supr., 571 A.2d 765, 767 (1990). The General Assembly will ultimately decide what, if any, appellate review of deviations from the SENTAC sentencing guidelines is appropriate for Delaware. Accordingly, the General Assembly, rather than this Court, is the appropriate forum to seek redress from SENTAC's apparent failure to carry out its legislative mandate to recommend a process for appellate review of deviations from its guidelines.

### *Mental Illness and Sentencing*

Siple contends that the sentencing judge was required, as a matter of law, to take his mental illness into consideration as a mitigating factor for punishment purposes. *See Sanders v. State*, Del.Supr., 585 A.2d 117, 120 (1990). *Cf. Sullivan v. State*, Del.Supr., 636 A.2d 931, 946 (1994). The record reflects that Siple was psychiatrically evaluated by Dr. Fred S. Berlin at the National Institute for the Study, Prevention and Treatment of Sexual Trauma. Dr. Berlin concluded that Siple "suffers from *a major Axis I psychiatric disorder* (i.e., paraphilic coercive disorder)," and, "[a]s such, I see him as *a mentally disordered sexual offender.*"

With regard to the possibility of raising insanity as a defense, Dr. Berlin opined:

I do not, however, feel that as a result of that disorder he lacks substantial capacity to appreciate the criminal nature of his conduct. Therefore, I do not believe that he qualifies under Delaware law for a finding of not guilty by reason of insanity.

**2.** The United States Supreme Court has summarized the federal sentencing system, as follows: The Sentencing Reform Act of 1984 (Act), as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. §§ 991–998, created the United States Sentencing Commission and empowered it to promulgate guidelines establishing sentencing ranges for different categories of federal offenses and defendants. The Act permits a federal district court to depart from the presumptive sentencing range prescribed by the Sentencing Guidelines only in certain circumstances. 18 U.S.C. § 3553(b). The Act also provides for limited appellate review of sentences in order to ensure the proper application of the [Sentencing] Guidelines. § 3742. *Williams v. United States*, 503 U.S. 193, 195–96, 112 S.Ct. 1112, 1116–17, 117 L.Ed.2d 341 (1992).

As to a "guilty, but mentally ill" finding, Dr. Berlin stated that:

On the other hand, I do believe that as a consequence of his mental disorder, he lacks substantial capacity to conform his conduct to the requirements of law. Therefore, in my professional opinion he does qualify for a finding of guilty but mentally ill.

Dr. Berlin also noted that he did not view Siple "as an individual of sound mind simply choosing to misbehave."

"Mental impairment" is a mitigating factor under the SENTAC guidelines if the offender establishes that, "because of ... mental impairment, [the offender] lacked substantial capacity for judgment when the offense was committed." The State argued, and the sentencing judge agreed, that the mitigating factor of "mental impairment," as defined in the SENTAC guidelines, was *not* established by the evidence in Siple's case because "Dr. Berlin said in his report that [Siple] did *not* lack substantial capacity for judgment when the offense was committed because of [his] mental impairment."

■ Siple argues that, even if the sentencing judge properly concluded Siple's illness did not comport with the SENTAC definition of "mental impairment," this Court has held "[f]ollowing a guilty but mentally ill verdict or plea in a non-capital case, a sentencing judge would be required to base [the] sentence on the implicit findings of both criminal responsibility and mental illness." *Sanders v. State*, Del.Supr., 585 A.2d 117, 133 (1990) (*citing Daniels v. State*, Del.Supr., 538 A.2d 1104, 1108 (1988)). The SENTAC standard is similar to the provisions of the Delaware insanity statute. *See Sanders v. State*, Del.

Supr., 585 A.2d 117, 124 (1990) (discussing the standards under the insanity statute); *Daniels v. State*, Del.Supr., 538 A.2d 1104, 1106–1108 (1988) (discussing same). In *Sanders*, this Court noted, however, that "[t]he culpability of mentally ill defendants may vary widely." *Sanders v. State*, 585 A.2d at 134. Consequently, the mitigating weight to be accorded to any degree of mental illness that does not rise to the level of legal insanity is properly entrusted to the discretion of the sentencing judge.

In this case, Siple did not enter a plea of "guilty but mentally ill." Nevertheless, the sentencing judge concluded that Siple's uncontested mental disorder was "a factor deserving some degree of mitigation." Thus, the contention that the sentencing judge erred by refusing to consider Siple's mental illness as a mitigating factor is contradicted by the record. Therefore, Siple's legal contention on this issue is without a factual basis.

### *Repetitive Criminal Conduct and Sentencing*

Siple next contends that the sentencing judge erred, as a matter of law, in construing the term "repetitive criminal conduct" as an aggravating factor for sentencing purposes. Before his sentencing, Siple had been recently convicted in both Maryland[3] and Pennsylvania[4] for similar crimes that occurred within the same time frame as the crimes at issue in this appeal. The sentencing judge concluded that these prior convictions constituted "repetitive criminal conduct."

The SENTAC guidelines define "repetitive criminal conduct" as "conviction or adjudication for the same or similar offense on two or

3. On August 21, 1994, Siple was arrested by the Ocean City, Maryland police following an incident which had occurred there that same evening. For this arrest, Siple eventually pled guilty to Assault with Intent to Rape in the Worcester County, Maryland, Circuit Court. Siple also pled guilty to a Second Degree Sexual Offense arising from another incident which took place on September 17, 1992, involving similar charges in Ocean City. On March 15, 1995, Siple was sentenced by the Circuit Court to a total of thirty-five (35) years for these offenses.

4. Siple was also charged in two Pennsylvania counties, Delaware and Chester, with similar offenses occurring in those counties on March 18, 1990, and December 15, 1991, respectively. Siple pled guilty to Rape Forcible Compulsion, Burglary and Rape/Threat of Forcible Compulsion in the Chester County case on May 14, 1996. He was sentenced immediately to a total of ten to twenty years, concurrent with his Maryland sentences, for those offenses. Siple also pled guilty to Rape in the Delaware County case on May 15, 1996. For this offense, Siple was sentenced immediately to a term of ten to twenty years, also concurrent with his Maryland sentences.

more previous, separate occasions." Siple argues that "repetitive criminal conduct" is analogous to the "two times convicted" requirement under the habitual offender statute.[5] The habitual offender statute has been interpreted to "apply[ ] only to those offenders who have been twice convicted of the specified felonies in prior proceedings where the second conviction took place on account of an offense which occurred after sentencing had been imposed for the first offense." *Hall v. State*, Del.Supr., 473 A.2d 352, 357 (1984). Siple argues that the habitual offender standard should apply to establish "repetitive criminal conduct" as an aggravating factor under the SENTAC guidelines.

■ The purpose of the habitual offender statute is to separate civilized society from individuals who have demonstrated their incorrigibility by repeatedly being incarcerated, released, and convicted of subsequent criminal offenses. *Hall v. State*, Del.Supr., 473 A.2d 352, 356 (1984). The habitual offender statute is a legislative scheme that can result in the establishment of a *status*. *Gibbs v. State*, Del.Supr., 208 A.2d 306, 308 (1965). An affirmative determination that an individual has qualified for "habitual criminal" status permits the imposition of an enhanced punishment, which may *exceed* the statutory range of sentences for the predicate or triggering convictions. *See Morales v. State*, Del.Supr., 696 A.2d 390, 394 (1997).

■ Under the SENTAC guidelines, "repetitive criminal conduct" is an aggravating factor which recognizes that repeat offenders may deserve a greater sentence *within* the prescribed statutory range than a first-time criminal offender. Repetitive criminal conduct is a venerable basis in our criminal justice system for an enhanced punishment *within* the statutory range set for the specific conviction at issue. This Court has held that a sentencing judge "has broad discretion to consider 'information pertaining to a defendant's personal history and behavior which is not confined exclusively to the con-

duct for which that defendant was convicted.'" *Mayes v. State*, Del.Supr., 604 A.2d 839, 842 (1992). The sentencing judge properly concluded that, to constitute "repetitive criminal conduct," prior convictions only needed to precede Siple's sentencing. *See id.* at 845.

### *"Closed Mind" of Sentencing Judge*

■ Siple's final contention is that the sentencing judge had a "closed mind." Superior Court Criminal Rule 32(a) " 'requires, by necessary implication, that before finally reaching a decision as to sentence, the sentencing judge have an open mind at least to the extent of receiving all information bearing on the question of mitigation.' " *Bailey v. State*, Del.Supr., 450 A.2d 400, 406 (1982) (quoting *Osburn v. State*, Del.Supr., 224 A.2d 52, 53 (1966)). Siple submits that the sentencing judge's closed mind was exemplified by the failure to give Siple's "decision to resolve this case through guilty pleas, any mitigating weight at all."

■ In support of the latter contention, Siple relies on *State v. Tiernan*, R.I.Supr., 645 A.2d 482 (1994). However, *Tiernan* provides that a "[i]n exchange therefor [a guilty plea] a defendant *may* properly be extended a certain amount of leniency in sentencing." *Id.* at 485 (emphasis supplied). It is within the sentencing judge's discretion whether to extend leniency or to "withhold[ ] leniency from others who appear less deserving." *United States v. Jones*, D.C.Cir., 997 F.2d 1475, 1478 (1993). *See also Mayes v. State*, Del.Supr., 604 A.2d 839, 846 (1992) (citing *Gaines v. State*, Del.Supr., 571 A.2d 765, 767 (1990)).

■ The record reflects that the judge thoroughly explained the basis for the two consecutive life sentences imposed upon Siple. In making his determination to exceed the SENTAC guidelines, the sentencing judge enumerated the aggravating factors of excessive cruelty, prior violent criminal conduct, repetitive criminal conduct, the need

---

5. The habitual offender statute provides that "[a]ny person who has been 2 times convicted of a felony or an attempt to commit a felony hereinafter specifically named ... who shall thereafter be convicted of a subsequent felony hereinafter specifically named ... is declared to be an habitual criminal, and the court in which such third or subsequent conviction is had, in imposing sentence, shall impose a life sentence upon the person so convicted...." 11 *Del.C.* § 4214(b).

for correctional treatment, and the undue depreciation of the offenses. The sentencing judge acknowledged that Siple exhibited "some degree of concern ... toward the victims" and, therefore, did not find lack of remorse as an aggravating factor. The sentencing judge found that Siple's mental disorder, while not a "mental impairment" as defined by SENTAC, "deserv[ed] some degree of mitigation."

The sentencing judge ultimately concluded that: "the nature of [Siple's] crime[s], including the aggravating factors that are present, far outweigh the mental impairment issue." The punishments imposed were the maximum. The record demonstrates, however, that those sentences were the logical deliberative product of an open-minded jurist, who had carefully considered the proper disposition for Siple.

### Conclusion

The judgments of the Superior Court are affirmed.