IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MYRON PARKER, | § | No. 375, 2015 |
| | § | |
| Defendant Below-Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1403018832A |
| Plaintiff Below-Appellee. | § | |

Submitted: February 10, 2016
Decided: February 18, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

## **O R D E R**

This 18th day of February 2016, upon consideration of the briefs of the parties and the record below, it appears to the Court that:

(1) The appellant, Myron Parker ("Parker"), filed this appeal from the Superior Court's June 24, 2015 Sentence Order. He requests that this Court vacate his sentence and remand his case for resentencing. On appeal, Parker asserts that the sentencing judge violated his right to allocution as provided by Superior Court Criminal Rule 32(a). He also contends that the judge exhibited a closed mind when indicating a sentence prior to affording him allocution. We disagree and AFFIRM.

(2) On October 28, 2012, Parker was driving through a trailer park in Newark, Delaware without his headlights illuminated. He was a resident of the development. In the area of 177 Garnet Street, Parker exited his vehicle and vomited on the ground. New

1

Castle County Police were called with a report of a man vomiting outside of his "dark colored" vehicle with registration number "39822."[1] A "verbal altercation" ensued between Parker and the individuals at 177 Garnet Street, during which Parker stated he would "be back with friends" and "burn their house down."[2] Accompanied by another person, Parker returned approximately ten minutes later. Parker and his companion engaged in a physical altercation with Michael Leger ("Leger"), during which Leger was fatally stabbed with an unidentified object. After attacking Leger, Parker and his co-conspirator fled the scene of the crime.

(3) On March 27, 2014, Detective John Ziemba obtained a warrant for Parker's arrest. The police arrested Parker two days later. Subsequently, the State and Parker reached a plea agreement, dated December 16, 2014, for Criminally Negligent Homicide.[3]

(4) On June 24, 2015, the Superior Court held a sentencing hearing. The prosecutor presented argument in support of the State's recommendation of a sentence of eight years, highlighting Parker's prior criminal history, failure to take responsibility for

---

[1] Investigators later determined that a black Acura, with Delaware registration 392388, was registered to Parker's mother.

[2] When the police arrived, they were informed that the individual involved in the verbal altercation was the same individual who vomited outside of his vehicle. An evidence detective collected swabs from the area containing the vomit and submitted them to the Medical Examiner's Office to obtain a DNA profile on the suspect. The DNA analysis performed by the Medical Examiner's Office indicated that the suspect was Parker. According to Detective John Ziemba's affidavit in support of the warrant issued for Parker's arrest, Parker was arrested in New Jersey for Resisting Arrest by Physical Force or Violence and his DNA was collected in connection with that incident.

[3] The State originally secured a grand jury indictment charging Parker with Manslaughter, Possession of a Deadly Weapon During the Commission of a Felony, Possession or Control of a Deadly Weapon by a Person Prohibited, and Conspiracy Second Degree.

2

Leger's death,[4] and supposed inability to recall the identity of his co-conspirator. The Superior Court also heard statements from Leger's father and mother. The court then heard argument from Parker's counsel concerning Parker's acceptance of responsibility, his supportive family, the "minimal and remote" nature of Parker's prior criminal history, and his history of full-time employment. Defense counsel requested a sentence "between four and five years," conceding that the "presumptive sentence of two years . . . would unduly depreciate the offense here."

(5)   Parker was sentenced to eight years at Level V under 11 *Del. C.* § 4204(k), followed by six months at Level III under 11 *Del. C.* § 4204(l). In sentencing Parker, the Superior Court discussed its impression that Parker lacked remorse, the "very substantial victim impact" flowing from the crime, and Parker's criminal history.[5] Subsequent to setting forth its sentencing rationale, the Superior Court stated:

> [I]t seems fairly clear at least the defendant knows who else is involved in this. And he's made a conscious decision to shield that person, which reflects his not taking full responsibility for what he has done. And it reflects[,] at least at one level[,] indifference to the victim's family. For that reason[,] the [Superior] Court is going to impose the eight years requested by the State for all those reasons. And the Court is prepared to sentence, unless there's anything else.
>
> Rise, Mr. Parker.

---

[4] The prosecutor read from Parker's presentence statement, which provided: "I really don't remember that night. Apparently, I was there because they matched my DNA with the DNA in some vomit. I drank pretty heavily. At the time, I may have blacked out from the alcohol. I don't know what to say. I feel bad about it. What do you say in this type of situation." A14 (Tr. 6:4-9).

[5] The judge also articulated his disbelief of Parker's asserted sympathy for the victim's family. The judge noted that it was "difficult to take those statements seriously when [Parker] seems to be protecting the other person who was involved in this incident. That is a cruel thing to do to the victim's family, at least that's how the [Superior] Court takes it."

(6)     After the Superior Court indicated that it intended to impose the maximum sentence, Parker's counsel requested a sidebar to note that Parker had not been permitted allocution. The Superior Court acknowledged the procedural shortcoming and sought to rectify the error immediately.[6] After the sidebar, the judge stated that Parker's counsel "correctly pointed out that I had indicated that the [Superior] Court intended to impose the maximum sentence before Mr. Parker had the opportunity to speak." The Superior Court continued:

> Mr. Parker is perfectly able at this point to speak to the [Superior] Court. And if he can say something that undermines what my thinking was as I announced it, I am perfectly willing to listen to what he has to say. For example, he could tell me the name of the person who was involved in this terrible incident. He also can speak

---

[6] The following exchange took place during the sidebar:

Counsel:     Your Honor, I don't know quite how to raise this. I'll just raise it. It appears that the Court has made up its mind about the sentence --

The Court:     I understand your concern. Does the defendant want to speak? I absolutely want to hear what he has to say. And that thought crossed my mind as I was speaking. I think the best way and the honest way to review what's going on -- everybody has heard my thinking. He's entitled now to speak and give me reasons why my thinking is incorrect. And I'm perfectly willing to hear them. I certainly am going to redo the sentence if he wants to tell me who the other person is. But I'm also certainly willing to revisit it if he has any other reasons to suggest that if the way that I'm looking at this is wrong and I'm incorrect.

. . .

Well, I'll make a short record aloud about this. Because you're absolutely correct that he was entitled to speak before I made up my mind. And I am absolutely willing to hear him speak now and to reconsider what I said if he can say something that convinces me that my thinking is misguided.

A18 (Tr. 21:7-22:11).

to some of the other things that I spoke about. And I want to emphasize that if he has something to say to me that calls into question what I said a few moments ago, I am perfectly willing to reconsider what the sentence in his case ought to be.

(7)     Parker then addressed the Superior Court.[7] Following Parker's statement, the judge formally sentenced Parker to the statutory maximum. In doing so, the Superior Court retained jurisdiction and stated that it would reconsider Parker's sentence if he identified his co-conspirator or otherwise showed signs of rehabilitation while incarcerated.

(8)     "Delaware decisional law has confirmed the right of a defendant to speak in allocution."[8] "[W]e have stated that '[a]ny failure of a trial court to adhere to the right [of allocution] is an error which is neither jurisdictional nor constitutional [and] not a fundamental defect which inherently results in a complete miscarriage of justice so as to constitute a denial of a fair trial.'"[9] In Delaware, the common law right of a criminal

---

[7] In whole, Parker's allocution statement was as follows:

> Your Honor, I do not recall the night of this incident. I know the Court doesn't believe me. That's understandable. I know the family probably has strong hatred for me. That's understandable as well. But I would like to apologize for their loss. It's really nothing I can say to make the family feel any better. I do accept whatever you give me, whatever time you give me. I accept the responsibility of the situation.

A18 (Tr. 23:18-24:3).

[8] *See Shelton v. State*, 744 A.2d 465, 495 (Del. 2000), *cert. denied*, 530 U.S. 1218 (2000) (citations omitted).

[9] *Id.* (quoting *DeShields v. State*, 1993 WL 366558, at *1 (Del. Aug. 3, 1993)) (internal quotation marks omitted). *See also DeShields*, 1993 WL 366558, at *1 ("The law is further well established that the common law right of allocution is not a right of constitutional dimension, at least in the absence of a request to exercise that right.").

5

defendant to allocution is set forth in Rule 32(a)(1)(C) of the Superior Court Rules of Criminal Procedure.

(9) Superior Court Criminal Rule 32 states that, "[b]efore imposing sentence, the court shall . . . [a]ddress the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence."[10] "[A]s a matter of good judicial administration," trial judges should "unambiguously address themselves to the defendant" and "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing."[11]

(10) While the Superior Court's allocution procedure in this case did not comply with Rule 32, and was an unfortunate error, resentencing is not required. Although the Superior Court did not personally address Parker before indicating a sentence, it did permit Parker to speak upon request, and it indicated a willingness to reconsider the sentence depending upon Parker's statements. Thus, Parker received the opportunity to express remorse and present mitigating information before the Superior Court formally and finally imposed a sentence. Parker availed himself of that opportunity and addressed the court.[12]

(11) This Court has also observed that Rule 32(a) "requires, by necessary implication, that before finally reaching a decision as to sentence, the sentencing judge

---

[10] DEL. SUPER. CT. CRIM. R. 32(a)(1)(C). This Court has recognized that allocution's function is to provide an opportunity for the defendant to ask for mercy, express remorse, demonstrate his or her humanity, and highlight mitigating circumstances. *See Shelton*, 744 A.2d at 492, 494.

[11] *Green v. United States*, 365 U.S. 301, 305 (1961).

[12] The record also shows that the Superior Court stated that it was "prepared to sentence, unless there's anything else."

6

have an open mind at least to the extent of receiving all information bearing on the question of mitigation."[13] "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[14]

(12) On balance, Parker has not demonstrated that the violation of Rule 32(a) here requires that he be resentenced. Nor has he demonstrated that the sentencing judge exhibited a closed mind.[15] The record reflects that the Superior Court considered facts bearing on the nature of the offense, Parker's character, and mitigation information. In fact, prior to the Superior Court indicating its intent to impose the maximum sentence, defense counsel "invoked the trial judge's discretionary leniency[,]"[16] underscoring information in mitigation of Parker's sentence. As noted above, the court also permitted Parker his right to allocution prior to imposing a final sentence.

(13) Parker's assertion that the sentencing judge exhibited a closed mind when he indicated that only certain statements would change his mind similarly does not merit resentencing. In particular, Parker suggests that the sentencing judge would only

---

[13] *Osburn v. State*, 224 A.2d 52, 53 (Del. 1966) (citing *Green*, 365 U.S. 301).
[14] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003) (citation omitted).
[15] *See Dabney v. State*, 12 A.3d 1101, 1103 (Del. 2009) (concluding that a judge "clearly did not sentence with a closed mind" where she permitted the defendant to express remorse, heard arguments from both attorneys, and invited the victim to make a statement); *McQuay v. State*, 2004 WL 2743527, at *1 (Del. Nov. 12, 2004) (rejecting a defendant's closed-mind argument where the sentencing judge heard the defendant's "expressions of remorse" and defense counsel's arguments, in addition to reading "letters of support" from the defendant's brother and neighbor).
[16] *Green*, 365 U.S. at 302; *see also Siple v. State*, 701 A.2d 79, 85 (Del. 1997) ("It is within the sentencing judge's discretion whether to extend leniency or to withhold leniency from others who appear less deserving.") (internal quotation marks omitted) (citations omitted) (alterations omitted).

reconsider the sentence if Parker identified the other person involved in the altercation. Parker did not heed the court's repeated requests to identify his accomplice, which the sentencing judge indicated demonstrated a lack of remorse.[17]  Nonetheless, prior to Parker's allocution statement, the Superior Court stated that it was willing to reconsider the sentence.[18]  The record indicates that the sentencing judge invited Parker to speak to some of the other things that were addressed in the court's sentencing rationale.  No limitation was placed upon what Parker could offer to the Superior Court.  Based upon the record before us, the defect in the process which occurred was addressed in a manner that does not undermine the fairness of the sentence that was imposed.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice

---

[17] Op. Br. Ex. 1 ("Defendant has no real remorse in that he will not identify his co-conspirator.").
[18] A18 (Tr. 21:17-21) ("I certainly am going to redo the sentence if he wants to tell me who the other person is.  But I'm also certainly willing to revisit it if he has any other reasons to suggest that if the way that I'm looking at this is wrong and I'm incorrect."); A18 (Tr. 22:9-11) ("I am absolutely willing to hear him speak now and to reconsider what I said if he can say something that convinces me that my thinking is misguided."); A18 (Tr. 23:3-12) ("[I]f he can say something that undermines what my thinking was as I announced it, I am perfectly willing to listen to what he has to say.  For example, he could tell me the name of the person who was involved in this terrible incident.  He also can speak to some of the other things that I spoke about.  And I want to emphasize that if he has something to say to me that calls into question what I said a few moments ago, I am perfectly willing to reconsider what the sentence in his case ought to be.").