IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FRANK DAVENPORT, | § | |
| | § | No. 690, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1401014417 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: September 21, 2016
Decided: October 21, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

**O R D E R**

This 21st day of October 2016, it appears to the Court that:

(1)    In this case, appellant Frank Davenport argues that his sentence for Manslaughter and Possession of a Deadly Weapon During the Commission of a Felony should be reversed.  His arguments are: i) that the State impermissibly breached its plea deal with him by asking the Superior Court to sentence Davenport to no less than the sentence cap to which Davenport and the State agreed; ii) that the Superior Court used inaccurate information to sentence Davenport in violation of his due process rights; and iii) that the Superior Court impermissibly ordered Davenport to pay restitution to the Victim's Compensation Assistance Program ("VCAP").

(2)     The Superior Court heard evidence at the sentencing hearing about how Davenport lived for several years with Holly Wilson, his girlfriend.[1] Evidence was presented that people who knew Wilson thought that Davenport was abusing her,[2] and, in fact, the record reflected that he was charged in 2008 and again in 2009 with offenses related to Wilson—offensive touching and terroristic threatening.[3] The second offense resulted in a no contact order that was still in place during the events at issue in this case.[4] On January 15, 2010, Davenport and Wilson spent part of the night at bars together—in violation of Davenport's no contact order—and, according to testimony presented in the police report, they fought while they were together.[5] After getting home, Wilson was shot.[6] Davenport was at Wilson's home when Wilson was shot and reported it to the police as suicide.[7] Davenport was ultimately charged with Wilson's murder and related charges. He took a plea agreement with the State where he pled no contest

---

[1] *E.g.*, App. State Del.'s Answering Br. at B11 (Cpl. Burton's Supplemental Police Report, May 5, 2011, complaint #32-10-005632) [hereinafter *Cpl. Burton's Report*].

[2] *E.g.*, *id.* at B14 (describing interviews with Wilson's neighbors and coworkers who reported injuries that they took to be signs of abuse).

[3] *Id.* at B1–B4 (Arrest warrant and affidavit of probable cause, Dec. 10, 2008, *State v. Frank Davenport*, Case No. 0812006991) (reflecting charges against Davenport for offensive touching of Wilson); *id.* at B5–B9 (Arrest warrant and affidavit of probable cause, Oct. 18, 2009, *State v. Frank Davenport*, Case No. 0910012767) (reflecting charges against Davenport for terroristic threatening of Wilson).

[4] *See* App. Appellant's Opening Br. at A-22 (DELJIS Charge Summary for Frank Davenport) (reflecting no contact order in place).

[5] *Id.* App. State Del.'s Answering Br. at B15–B16 (Cpl. Burton's Report) (describing interviews with bartenders at the bars Davenport and Wilson visited that night).

[6] *Id.* at B10.

[7] *Id.* at B11 (describing Davenport's call to the police).

2

to a manslaughter charge and a weapons charge. The State committed to not seek a sentence of greater than ten years.[8] In advance of the sentencing hearing, the State submitted a case summary describing not only the events on the day leading to Wilson's death but also the history of Davenport's relationship with Wilson, pictures of Wilson's body, and home videos of Wilson with her family.[9] At the hearing, Davenport asked for a five-year sentence—the statutory minimum—and the State asked for a ten-year sentence.[10]

(3) After hearing that evidence, the Superior Court noted the series of incidents involving Davenport and Wilson before the killing. The Superior Court observed that the charges for offensive touching and terroristic threatening were dismissed "as we sometimes see in domestic violence cases."[11] The Superior Court referred to the existence of the no contact order as "most significant."[12] Other than those observations, the Superior Court referred to no other events or circumstances before the night of the killing. After making those observations, the Superior

---

[8] *Id*. at B210 (Plea Hearing Transcript, May 27, 2015, *State v. Frank Davenport*, Case No. 1401014417); App. Appellant's Opening Br. at A-29 (Plea Agreement, May 27, 2015, *State v. Frank Davenport*, Case No. 1401014417).

[9] App. Appellant's Opening Br. at A-31 to A-74 (Case Summary, Nov. 9, 2015, *State v. Frank Davenport*, Case No. 1401014417).

[10] *Compare id*. at A-77 (Sentencing Transcript, Nov. 20, 2015, *State v. Frank Davenport*, Case No. 1401014417 (recording the State as saying "[a]ny sentence less than 10 years would unduly depreciate and ignore the violence and the abuse Holly Wilson endured at the hands of the defendant") [hereinafter *Sentencing Hearing*]), *with id*. at A-84 (recording Davenport's request for "five years incarceration").

[11] *Id*. at A-85.

[12] *Id*.

Court summarized its view of the aggravating and mitigating factors and imposed a twenty-year sentence and ordered that Davenport pay restitution to VCAP. Davenport appealed, arguing that his sentence should be modified.

(4)   As indicated, Davenport raises three issues on appeal.   First, Davenport argues that the State breached its plea agreement to not seek more than ten years incarceration for him by presenting materials to the Superior Court that suggested his crimes and history justified a lengthy sentence.  Not only was this argument not properly presented below and therefore subject only to review for plain error,[13] it is without merit.  Davenport's argument that the State engaged in a de facto breach of its plea agreement founders on a key factor he fails to emphasize: he did not argue to the Superior Court that it should sentence him to the ten-year cap to which the State agreed.  Instead, Davenport argued for a sentence of half that.  Because he argued for only a five-year sentence, the State was fully within its rights to present evidence justifying the Superior Court in imposing the ten-year sentence to which it had agreed.  Nowhere in the record did the State seek a sentence above ten years, and to the extent that it presented evidence that the Superior Court, in its discretion, utilized to impose a sentence of twenty years, Davenport's own strategy invited the presentation of that evidence to overcome his argument that he should only receive five years.

---

[13] *Russell v. State*, 5 A.3d 622, 627 (Del. 2010) (citing Del. Supr. Ct. R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del. 1986)).

4

(5)     Second, Davenport argues, in essence, that the Superior Court used inaccurate information in sentencing him.  At sentencing, the Superior Court stated the overall sentence, the potential for trial avoided by the plea agreement, a number of points from the record about the relationship between Davenport and Wilson, and then summed up Davenport's situation by saying:

> I find the aggravating factors as follows: Prior violent criminal conduct with respect to Holly Wilson as an identified victim; repetitive criminal conduct with respect to Holly Wilson as a identified victim; prior abuse of the victim; and vulnerability of the victim.  I find in mitigation childhood trauma.[14]

Davenport argues that this statement represents the Superior Court applying specific aggravators used in the guidelines created by the Delaware Sentencing Accountability Commission ("SENTAC"): Prior Violent Criminal Conduct, Repetitive Criminal Conduct, and Vulnerability of Victim.  Davenport argues that the Superior Court improperly used those defined aggravators to determine the length of his sentence.  Each of those aggravators is defined in the SENTAC Benchbook, which is "designed to assist sentencing judges . . . in the formulation of sentences that are consistent with the goals of sentencing reform . . . ."[15]  The Benchbook presents "recommended" sentencing ranges for given crimes "when aggravating or mitigating factors are not present" as well as "[a]ggravating and mitigating factors" that are "to be used to explain a sentence imposed either above

---

[14] App. Appellant's Opening Br. at A-85 to A-86 (Sentencing Hearing).
[15] DELAWARE SENTENCING ACCOUNTABILITY COMMISSION, BENCHBOOK 22 (2014).

or below the presumptive sentence."[16] Salient for this case, the Benchbook also notes that "[o]ther factors, which do not appear on this list, may be utilized at the discretion of the sentencing judge."[17] Thus, the Benchbook defines Prior Violent Criminal Conduct as "[d]efendant has demonstrated, by his prior criminal history, a propensity for violent criminal conduct."[18] Repetitive Criminal Conduct is defined in the SENTAC Benchbook as "conviction or adjudication for the same or similar offense on two or more previous, separate occasions."[19] And Vulnerability of Victim is defined in the SENTAC Benchbook as "[t]he Defendant knew, or should have known, that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health."[20] Davenport correctly argues that if the Superior Court's decision had been based on those specific SENTAC aggravators, the resulting sentence would have been reversible error because the record before the Superior Court does not support the proposition that i) Davenport was a convicted and reoffending violent criminal, ii) that he had been convicted of an unlawful killing on two other occasions, or iii) that Wilson was especially vulnerable to Davenport due to her age or health.

---

[16] *Id*. at 23.
[17] *Id*.
[18] *Id*. at 128.
[19] *Id*. at 129.
[20] *Id*.

6

(6)     But, this Court does not read the Superior Court's sentencing statement as applying defined SENTAC aggravators to determine Davenport's sentence.  Instead, the context of the bulk of the sentencing statement leading up to its summative paragraph—the paragraph upon which Davenport relies so heavily—reveals that the Superior Court permissibly exercised its discretion to base its sentence on an overall assessment of Davenport's tumultuous relationship with Wilson and that relationship's horrific ending.  That assessment served as a single aggravating circumstance rather than as a mechanistic adding up of SENTAC aggravators that result in a sentence of a given length.  The Superior Court's use of the phrase "with respect to Holly Wilson" in connection with the terms "[p]rior violent criminal conduct" and "repetitive criminal conduct" makes this clear.[21]

(7)     The summative paragraph on which Davenport singularly focuses is actually the culmination of the Superior Court's discussion of specific evidence that was presented during the sentencing hearing.  In the sentencing statement, the Superior Court noted a series of incidents involving Davenport and Wilson before the killing, including when Davenport was charged with offensive touching and terroristic threatening of Wilson.[22]  The Superior Court noted both that the charges

---

[21] App. Appellant's Opening Br. at A-85 (Sentencing Hearing).
[22] Davenport also argues that some of his conduct with Wilson that the Superior Court refers to was supported by insufficiently reliable evidence that was "unknown" or "vague."  Appellant's

were dismissed "as we sometimes see in domestic violence cases" and that the no contact order continued to be in place through Wilson's death.[23] Importantly, the Superior Court referred to the existence of the no contact order as "most significant."[24] The Superior Court referred to no other events or circumstances before the night of the killing in its sentencing statement.

(8) Thus, this Court disagrees with Davenport's theory that the Superior Court mistook him for a previously convicted, violent criminal whose victim was elderly or ill. Rather, in light of the pages of evidence presented to accompany the hearing, as well as the Superior Court's own description of the record, the most reasonable understanding of the Superior Court's reference to "aggravating factors" is as a matter of rhetorical emphasis—reinforcing the Superior Court's major point, which was that this killing was the culmination of a long-standing pattern of abuse by Davenport toward Wilson that was critical to its decision to

---

Opening Br. at 28. Due process requires that information used in sentencing meet a "'minimal indicium of reliability beyond mere allegation' standard," but the evidence that the Superior Court considered regarding Davenport's past domestic abuse of and violence toward Wilson was sufficiently reliable. *Mayes v. State*, 604 A.2d 839, 840 (Del. 1992) (quoting *United States v. Baylin*, 696 F.2d 1030, 1040 (3d Cir. 1982)). The conduct the Superior Court cites in its sentencing statement was supported by arrest warrants and affidavits, App. State Del. Answering Br. at B1–B4 (Arrest warrant and affidavit of probable cause, Dec. 10, 2008, *State v. Frank Davenport*, Case No. 0812006991) (reflecting charges against Davenport for offensive touching of Wilson); *id.* at B5–B9 (Arrest warrant and affidavit of probable cause, Oct. 18, 2009, *State v. Frank Davenport*, Case No. 0910012767) (reflecting charges against Davenport for terroristic threatening of Wilson), testimony from Wilson's son, *id.* at B19 (Cpl. Burton's Report), and police interview records with other identified individuals in a position to personally observe Wilson's conduct and interactions with Davenport, *id.* at B11, B14, B15, B20.

[23] App. Appellant's Opening Br. at A-85 (Sentencing Hearing).

[24] *Id.*

8

impose a sentence that, although above the SENTAC guideline range, was half of the statutory maximum. That is, the Superior Court's remarks cannot be reasonably read as erroneously citing to factors defined in the SENTAC Benchbook, but instead the remarks read in context plainly reflect the Superior Court's own assessment of what factors were relevant, and that the Superior Court was not using this terminology in the same sense as it is used in the SENTAC Benchbook. However confusing, that linguistic overlap in usage does not create grounds for reversal. Put simply, it was permissible for the Superior Court to consider a woman who remained in a relationship fraught with the potential for violence—despite multiple interventions by the police and a no contact order—to be vulnerable. Again, the Superior Court was focused on the abusive relationship and Wilson's related vulnerability as factors rationally supporting its conclusion that Davenport deserved a lengthier sentence. Davenport cannot have reasonably expected that his past tumultuous history of relations with Wilson would not have been a central factor in his sentencing. Trial courts have broad discretion to issue sentences within statutory limits and do not have to adhere to the SENTAC guidelines, which by their own terms are advisory and do not create any enforceable right to have them specifically adhered to by the Superior Court.[25]

---

[25] "[T]his Court has consistently held that it is without appellate jurisdiction in criminal cases to review challenges on the sole basis that a punishment deviated from the SENTAC sentencing guidelines." *Siple v. State*, 701 A.2d 79, 83 (Del. 1997) (citing *Mayes v. State*, 604 A.2d 839,

Although we urge the Superior Court to use greater precision, particularly when explaining to what extent a sentence is supported by the specific SENTAC factors and to what extent a sentence is underpinned by an exercise of judicial discretion taking into consideration facts not addressed in the SENTAC factors, in this case the record provides rational support for the Superior Court's sentence and we find no basis to conclude that the Superior Court premised its sentence on an erroneous application of the SENTAC guidelines.

(9)     Third, Davenport now argues that it was plain error for him to be ordered to pay restitution to the VCAP under an amended version of 11 *Del. C.* § 9014 rather than the one in place at the time he committed the manslaughter.[26] This argument was not properly presented below and cannot possibly rise to plain error. At all relevant times, a statute was in place that required persons convicted of crimes like Davenport committed to pay restitution.[27] Even had Davenport raised this issue properly, he would have to show that somehow the amendment

---

845–46 (Del. 1992); *Gaines v. State*, 571 A.2d 765, 767 (Del. 1990); *Ward v. State*, 567 A.2d 1296, 1297–98 (Del. 1989)).

[26] Before August 12, 2014, 11 *Del. C.* § 9014 was silent on the VCAP's ability to recover a restitution award made against a convicted defendant directly rather than indirectly through the victim herself. The revision, effective before Davenport's plea hearing and sentencing clarifies that "[w]henever any person is sentenced for an offense and compensation has been paid under this chapter to a victim of such offense, the Agency may assert a claim for reimbursement of the Victims' Compensation Fund as restitution from the criminal defendant." 11 *Del. C.* § 9014(c).

[27] When this Court previously examined the power of courts to award restitution to VCAP, this Court considered the law as it existed at the time of the defendant's restitution hearing. *State, Victims' Compensation Assistance Program v. Chianese*, 128 A.3d 628, 631 (Del. 2015). Here, § 9014(c) established VCAP's authority to seek restitution at the time of the sentencing hearing.

was more than procedural and imposed on him after-the-fact liability.[28]  Given that he did not even argue this issue below and that restitution is a long-standing requirement of our law,[29] the Superior Court did not commit plain error by applying the statute that both the State and Davenport's counsel contended was applicable to his duty to pay restitution.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[28] The effect of the statutory difference Davenport focuses on is *to whom* the Superior Court could order him to pay restitution, not *if* he could be ordered to pay restitution  or its extent.  "To fall within the ex post facto prohibition [of the United States Constitution], a law must be retrospective—that is 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime."  *Snyder v. Andrews*, 708 A.2d 237, 248 (Del. 1998) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)).  The amendment did not increase a defendant's exposure, it just made clear that if VCAP paid the victim restitutionary funds, VCAP could recover the restitution from the party ultimately responsible, the defendant found guilty and liable to pay it.

[29] 11 *Del. C*. § 4101 has acknowledged the power of a court to impose "a fine, costs, restitution or all 3" upon a convicted person since at least the early 1980s.  *See* 63 Del. Laws ch. 141, § 6 (1981) (amending the statute to include the words "restitution or all 3").