# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 2009007545 |
| | ) | |
| UNIQUE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 16, 2022
Decided: April 18, 2022

*Upon Defendant's Motion for Reduction of Sentence*

**DENIED**

## <u>MEMORANDUM OPINION AND ORDER</u>

Michael H. Tipton, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947, Attorney for State of Delaware.

Benjamin S. Gifford IV, Esquire, 14 Ashley Place, Wilmington, DE 19804, Attorney for Defendant.

**KARSNITZ, R.J.**

On October 6, 2021, Unique Smith ("Smith" or "Movant") came before me and, after a thorough colloquy, entered a guilty plea to two felony charges: Manslaughter and Possession of a Firearm During the Commission of a Felony ("PFDCF"). The parties agreed to a presentence investigation and open sentencing. The State of Delaware (the "State") agreed to cap its recommendation for Level 5 incarceration at 50 years, suspended after 25 years at Level 5 for various degrees of probation. I ordered a presentence investigation report, and Movant was scheduled to be sentenced on November 19, 2021. Counsel for Movant provided the presentence officer with a forensic evaluation of Movant conducted by Dr. Jordan Bell (the "Bell Report"). The Bell Report was attached to Movant's presentence report.

I held a sentencing hearing on November 19, 2021. At sentencing, Movant's counsel advocated for a total sentence of 5 years of incarceration at Level 5. The State advocated for a cumulative sentence of 25 years of incarceration at Level 5. I sentenced Movant to Level 5 incarceration for 50 years, suspended after a cumulative 22 years at Level 5 for descending levels of probation. I also imposed

1

various fines, costs, and other conditions. In doing so, I articulated six (6) aggravating factors: (1) Lack of Amenability to Lesser Sanctions; (2) Custody Status at Time of Offense; (3) Undue Depreciation of the Offense; (4) Vulnerability of Victim; (5) Repetitive Criminal Conduct; and (6) Excessive Cruelty.

On February 17, 2022, Movant timely filed[1] his first Motion for Reduction of Sentence (the "Motion") under Superior Court Criminal Rule 35(b), asking that I reduce his sentence to between 8 and 12 years. On March 16, 2022, the State filed its Response to the Motion, asking that the sentence remain the same. This is my ruling on the Motion.

**SENTAC Guidelines**

Defendant asserts that I erroneously exceeded the presumptive guidelines for Manslaughter and PFDCF. The range of sentences for Movant's Manslaughter and PFDCF convictions are from 5 years to 50 years at Level 5. As discussed more fully below, I imposed a legal sentence based upon the facts and

---

[1] Within 90 days after imposition of sentence under Super. Ct. Crim. R. 35(b).

circumstances surrounding Movant's crimes.

In support of his Motion, Defendant argues that I violated several provisions of the Delaware Sentencing Accountability Commission ("SENTAC"), which was created with the purpose of establishing a system in Delaware "that emphasizes accountability of the offender to the criminal justice system and accountability of the criminal justice system to the public."[2] To fulfill that purpose, SENTAC establishes sentencing guidelines located within the Benchbook.[3] The presumptive sentences established by SENTAC "are based on the classification of the offense, and whether it is violent or non-violent in nature."[4] The Benchbook also enumerates specific aggravating and mitigating factors that I should consider when imposing a sentence.[5] While the "standard sentence range is presumed to be appropriate for the typical criminal case," the existence of such

[2] *Delaware Sentencing Accountability Commission Benchbook,* at 21 (2020) ("the Benchbook"). The Benchbook can be located at https://cjc.delaware.gov/wp-content/uploads/sites/6l/2020/02/Benchbook-2020F.pdf.
[3] The Benchbook at 21.
[4] *Id.*
[5] The Benchbook at 110-14.

factors can justify upward or downward departures from those guidelines. [6] Each of the enumerated aggravating and mitigating factors includes definitions promulgated by SENTAC.[7] The guidelines established by SENTAC are presumptive only, and not binding on the sentencing judge.[8]

There is no constitutional or statutory right under Delaware law to appeal a criminal punishment on the sole basis that it deviates from the SENTAC sentencing guidelines."[9] "[T]he trial court must explain its reasons for doing so, but it is authorized to exceed the SENTAC guidelines without making any factual findings beyond those reflected in the jury's verdict,"[10] or, as in this case, the charges to which the Defendant pled guilty. While it is within my discretion to reduce a criminal sentence, justice is not served by a redundant reassessment of the facts known and available to me at the time of sentencing.[11] While Movant is

---

[6] The Benchbook at 110.
[7] The Benchbook at 112-14.
[8] *Walters v. State,* 2013 WL 4540040 at *1 (Del. Supr. Aug. 23, 2013).
[9] *Siple v. Slate,* 701 A.2d 79, 83 (Del.1997).
[10] *Id.*
[11] See *In re Briddelle,* 2004 WL 344006 (Del. Super. Feb. 17, 2004) (noting that "[t]here must be some finality to cases.").

displeased with the sentence imposed, no new or different facts have been offered that were not known to the parties at the time of sentencing.

**Aggravating Factors**

Movant asserts that I improperly relied on three aggravating factors: Vulnerability of Victim, Repetitive Criminal Conduct, and Excessive Cruelty.

**Vulnerability of Victim**

With respect to Vulnerability, I considered that the victim was defenseless and Movant shot him in the back. The Benchbook defines the vulnerability factor as follows: "The Defendant knew, or should have known, that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health."[12] Although the victim may not have been extremely young or old, physically handicapped, or sick, in my view he certainly was vulnerable because he was incapacitated and could not resist.

**Repetitive Criminal Conduct**

---

[12] The Benchbook at 112.

With respect to Repetitive Criminal Conduct, The Benchbook defines such conduct as a "conviction or adjudication for the same or similar offense on two or more previous, separate occasions."[13] The Benchbook also provides that when sentencing on more than one offense, "prior criminal history should be considered only in determining the guideline for the 'lead' or most serious offense. Sentences for other current charges shall be calculated based on zero criminal history."[14] The Benchbook further states that "[f]or the purposes of sentencing, only those offenses adjudicated at age 14 or older shall be counted in prior history."[15]

Movant argues that the governing offense is the most serious offense, in this case, PFDCF, because it carries a longer minimum mandatory sentence than Manslaughter, and that there is only one such incident of similar conduct. One similar incident was adjudicated in Family Court when Movant was only 13

---

[13] *Id.*
[14] The Benchbook at 26, Policy 7.
[15] The Benchbook at 25, Policy 3.

years old, and therefore does not count. In another, the prosecution entered a *nolle prosequi*, and therefore it is not a conviction which counts. This leaves only one conviction for a similar offense, rather than the requisite two.

Although Movant may not technically meet the definition of Repetitive Criminal Conduct, there are certainly similar *charges* (albeit not countable convictions). In any event, even if this aggravating factor is completely disregarded, I would not have imposed a lesser sentence.

**Excessive Cruelty**

Movant asserts extensively that I misjudged the nature of the confrontation between Movant and the victim, as evidenced by a surveillance video of the altercation. At sentencing I did not, and as I write this decision I do not, perceive the need to view this video, which I am told is grainy and, in any event, whose view is blocked when the fatal shot is fired. Movant argues that I should have viewed the video at sentencing as the "best evidence" of the crime. Sentencing, however, is not the time for Movant to attempt to relitigate the facts of his case. Ignoring his guilty

plea to all elements of the crimes, and the fulsome colloquy surrounding that plea, Movant now argues, based on extrinsic evidence, that the victim unquestionably was the instigator, that Movant attempted to retreat from the victim before any physicality took place, and that the shooting was wholly accidental.

> I stand by my statement at sentencing:

> I think the best evidence I have here as to what happened is that there was this altercation and Mr. Akins was assaulted, and he may, or may not, but he may have, initiated this. Frankly, that doesn't matter a whole lot to me at this point because even if he did, it doesn't justify what happened to him. What is clear to me is that Mr. Akins was in a defenseless position when you, Mr. Smith, approached him and shot him in the back.

> Mr. Gifford indicated to me that this shouldn't be a case that shocks the conscience of the Court. This shocks my conscience. Again, I ask myself what really happened here and why did it. This was a brutal crime. It was an execution.[16]

If this does not meet the definition of "excessive cruelty," I do not know what does.

The Delaware Supreme Court has interpreted the sentence rationale given by a sentencing Judge as a proper overall assessment of the defendant's

---

[16] Transcript of Sentence Hearing dated November 19, 2021, at 23-24.

tumultuous behavior.[17] The Supreme Court viewed the sentencing Court's assessment as a "single aggravating circumstance rather than as a mechanistic adding up of SENTAC aggravators that result in a sentence of a given length."[18] The Court came to this conclusion because the bulk of the sentencing Court's statement was about the "overall assessment of Davenport's tumultuous relationship with Wilson." [19]

My statement at Movant's sentencing (see previous page) was related to the pointless nature of the shooting. As in *Davenport*, I listed the aggravating factors that I considered, but the list itself "was a matter of rhetorical emphasis reinforcing the Superior Court's major point,"[20] which was the pointless and violent killing of a defenseless victim.

## Mitigating Factors

---

[17] *Davenport v. State,* 150 A.3d 274 (Table) (Del. 2016).
[18] *Id.*
[19] *Id.*
[20] *Id.*

Movant also asserts that I sentenced him with a closed mind, in violation of Superior Court Criminal Rule 32(a), in that I did not consider mitigating factors, primarily those detailed in the Bell Report, including the following:

Nondevelopmental Factors

Parenting and Family Factors

Community Factors

Disturbed Trajectory Factors

Protective Factors

The Delaware Supreme Court has held that Rule 32(a) "requires, by necessary implication, that before finally reaching a decision as to sentence, the sentencing judge have an open mind at least to the extent of receiving all information bearing on the questions of mitigation."[21] That Court has also stated that a judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the

---

[21] *Bailey v. State,* 450 A.2d 400,406 (Del. 1982) (quoting *Osburn v. State,* 224 A.2d 52, 53 (Del. 1966)).

character of the defendant.[22] "A judge must have an open mind for receiving all information related to the question of mitigation."[23]

Movant mischaracterizes my consideration of the mitigating factors. Movant's counsel provided the presentence investigator with the Bell Report, which was then summarized in the presentence investigation report and attached in full as an addendum to the report. In fact, I read the entire Bell Report as an integral part of the presentence investigation. I took all the mitigating factors described in detail by Dr. Bell into account when imposing sentence on Movant.

I spent a significant portion of my sentencing statement addressing the nature of the shooting. I addressed Movant's character when I found Movant to pose a danger to the community. When I began my sentencing statement, I referenced the presentencing investigation and how I relied upon it in crafting my sentence.

---

[22] *Ellerbe v. State,* 755 A.2d 387 (Del. 2000).
[23] *Johnson v. State,* 143 A.3d 1 (Del. 2016) (Table).

During sentencing argument, Movant's counsel again focused on the mitigating factors. I listened to those statements. I allowed Movant to speak to me directly. Movant had a prewritten letter read on his behalf by his counsel. I then gave Movant another opportunity to address me, which he chose not to do. I thanked all parties for their comments and indicated that they were helpful. Considering all relevant facts and viewing them rationally is not bias, but is an exercise of judgment.

**Reliance on False, Impermissible, or Unreliable Facts**

Finally, Movant asserts that, contrary to Delaware law, I imposed a sentence that "is based on factual predicates which are false, impermissible, or lack minimal reliability."[24] He asserts that I "inadvertently" imposed the sentence on him relying upon misperceived facts about the events that led to the

---

[24] *Whittle v. State,* 2021 WL 3578625 at *2 (Del. Supr. Aug. 12, 2021); *Thomas v. State,* 2020 WL 3259486 at *1 (Del. Supr. June 16, 2020) (citing *Kurzmann v. State,* 903 A.2d 702, 714 (Del. 2006)).

death of the victim, thus leading to the imposition of a harsher sentence.

My sentence was assuredly not "inadvertent." I relied on the presentence investigation, which contained police reports, witness statements, crime photos, and the autopsy report, when crafting Movant's sentence. I also relied on the arguments provided by the parties at the sentencing hearing. These items meet the minimum indicia of reliability and have not been proven to be demonstrably false.

However, as discussed above, Movant asserts that I misjudged the nature of the confrontation between Movant and the victim, as evidenced by a surveillance video of the altercation. Movant now argues, based on this video, that the victim unquestionably was the instigator, that Movant attempted to retreat from the victim before any physicality took place, and that the shooting was wholly accidental. In my view, the video does not prove that I relied on demonstrably false facts. I am told by counsel that the video, which I did not rely on when making my sentencing decision, depicts a fight between the parties. Though it shows the

steps leading up to the shooting and Movant's actions after the shooting, the video is inconclusive because the crowd's position during the shooting blocks any view of the shooting itself. Movant interprets the video in the light most favorable to him. This interpretation of the video is not supported by the eyewitness testimony and other actions of Movant. In my view, the video is not proof that the police reports and eyewitness statements in the presentence investigation upon which I relied are demonstrably false.

The Delaware Supreme Court has stated: "We review a sentence determination on appeal only to determine whether it is within the applicable statutory limits and whether it is based upon factual predicates which are false or impermissible, or which lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[25] And further, "In Delaware, the trial court has broad discretion in determining which information to rely on in imposing a sentence, including information pertaining to the defendant's personal history and behavior, the

---

[25]*Kurzmann v. State* 903 A.2d 702, 714 (Del. 2006).

presentencing report, and other sources."[26] "Thus, in reviewing a sentence within statutory limits, this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability."[27]

Under these standards, my sentence was not based on false, impermissible, or unreliable facts.

For the reasons stated above, I **DENY** Defendant's Motion for Reduction of Sentence.

**IT IS SO ORDERED.**

<u>/s/ Craig A. Karsnitz</u>

cc:  Prothonotary

---

[26] *Mayes v. State*, 604  A .2d 839, 842 (Del. 1992).

[27] *Mayes v. State,* 604 A.2d at 842 (quoting *Ward v. State,* 567 A.2d 1296, 1297 (Del. 1989)).

15